SIMON TOWLE, COMPTROLLER, APPELLANT, vs. THE STATE OF FLORIDA, *ex rel.* FISHER, SHERIFF.

The law requiring a prosecutor to be set at the foot of an indictment for assault and battery, is not merely directory. If it is not done, the indictment for that cause is defective and may be quashed. But if it is not quashed, and process issues upon it, the officer, who is not bound to inquire into the regularity of the proceedings, is entitled to his costs, and the State is bound to pay them, if the party is acquitted.

The writ of *mandamus* is not the mode by which such a claim is to be enforced against the State. In the absence of any specific provision upon the subject of claims against the State, which the Comptroller rejects or refuses to allow, the only redress is by application to the Legislature.

Where a purely ministerial act is to be done, and there is no other specific remedy, a *mandamus* will be granted ; but where the person against whom a *mandamus* is prayed is invested with judicial power, or acts in a deliberative capacity, or has the power and right of *deciding*, the writ will not lie, except to compel him to proceed to the discharge of his duty, by deciding according to the best of his judgment.

The Comptroller of this State, in the administration of the concerns of his office, is required to exercise judgment and discretion, and the Courts cannot act directly upon him by *mandamus*, and thereby guide and control his judgment and discretion.

The act creating the office of Comptroller vests him with discretion to be exercised in the examination of accounts, claims, or demands against the State. When, in the exercise of his discretion and judgment in any particular case, he rejects an account, the writ of *mandamus* is not the appropriate remedy.

Appeal from decision of the Circuit Court of the County of Leon, made at the Fall Term, 1849, awarding a mandamus against the Comptroller.

The facts of the case are sufficiently stated in the opinion of the Court.

*Hogue,* for appellant:

1. It was error in the Circuit Court to award a *mandamus* in this case, because, upon the principles governing in cases of this character, the writ does not properly lie. Where a discretion is vested in an executive officer by law, a *mandamus* will lie to compel him to proceed to the exercise of his discretion, but not directing him as to the mode and manner of its exercise, or as to the decision he should make. This is a matter for his own judgment.

2. The laws of Florida (see Thomp. Dig., 31, and the pamphlet laws, 1848,) give to the Comptroller the power of allowing or disallowing in whole or in part, claims presented against the State, and no provision is made for an appeal from his decision. Without such provision, his decision must be final, subject only to review and reversal by the legislative authority, to which, if a party feels aggrieved, he can apply for redress.

3. A *mandamus* only lies to compel the performance of a mere ministerial act enjoined by law, or appertaining to the duties of the officer. But where the officer is left to the exercise of his discretion as to whether he will or will not perform the act, it is impossible, upon principle, to coerce performance by *mandamus.* It is no answer to this to say that the fees of officers are ascertained by law, because still the Comptroller is the judge as to the question whether a particular claim presented is or is not a charge against the State. If this be not true, why is he authorized " to admit or reject, allow or disallow." To support these positions, and to show the principle ruling in such cases, I cite Kendall vs. United States, 12 Peters, 524. 10 Pick., 245–6. 2 Va. Cases, 92. U. S. Dig., 3d vol., p. 9, art. 4, § 99—in some of which cases, it will be seen, a *mandamus* was granted; but the principle which I have laid down was fully recognized as the *criterion* by which it is to be determined in every case presented, whether the writ is the appropriate remedy. See also the case of Brashear vs. Mason, 6 Howard Sup. Court Reports.

To show that other States have thought it necessary to provide for appeals from the decision of the auditor of public accounts, I refer to 1 Robinson's Practice, page 33.

*Maxwell,* for appellee :

The relator, Fisher, filed his petition, complaining that the Comp-- troller refused to allow certain accounts of his against the State, and asking for a *mandamus.* The accounts were for services as Sheriff, in the apprehension, &c. of the persons therein named, who were indicted for assault and battery, and were made up of the fees given by the statute for such services.

The Comptroller answers, admitting the rejection of the accounts, but denying the power of the Court to control his action in the matter, on the ground that the statute prescribing his duties and powers invests him with discretion in such cases, not subject to the supervision of the Courts. He answers, further, that if the Court can exercise the power claimed for it, this is not a case in which it will do so, because the statute (Thomp. Dig., 522,) requires a prosecutor to be endorsed on indictments for assault and battery, who shall be liable for costs, on failure of the indictment, and as this was not done in the cases on which the accounts here presented were founded, the State is not liable for them.

Upon the petition and answer, the Court below decided that the *mandamus* shall issue, from which the Comptroller appealed.

The question first arising is, as to the power of the Court to grant the *mandamus.* Our constitution gives it " original jurisdiction in all matters, civil and criminal, within this State," not excepted by that instrument, (Thomp. 53 ;) and there is no exception against awarding a *mandamus* according to the common law, which is of force here. " Jurisdiction in all matters, civil and criminal," is certainly a grant of power broad enough to cover a proper case of *mandamus.* This will more fully appear by reference to the nature of the writ. It is a " command, * * directed to any person, corporation, or inferior court of judicature, * * * requiring them to do some particular thing therein specified, which appertains to their office and duty, and which the Court * * has previously determined, or at least supposes to be consonant to right and justice." This is the definition of Blackstone, (Vol. 3, p. 110.) Lord Mansfield, in 3 Burr, 1266, says : " This writ ought to be used upon all occasions, where the law has established no specific remedy, and where in justice and good government there ought to be one." And this law is founded upon what Blackstone calls a general and indisputable rule, " that

where there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded;" in other language of his, it is a "settled and invariable principle in the laws of England,. that every right, when withheld, must have a remedy, and every injury its proper redress."

Now, in a clear case of right—for instance, if the Legislature had,. in so many words, directed the Comptroller to allow and pay this account—these principles would assuredly give the remedy by *mandamus*, if he refused, because there would be no other legal remedy open to the relator. So it is, too, where the statute in general terms allows specified fees for certain services. If the services be performed, and the fact comes before him properly authenticated, there is no discretion left the Comptroller. He is but acting in a ministerial capacity, and must obey the directions of the law. He may have discretion in reference to accounts against the State, where the statute has made no specific regulations as to the charges. Then it would be for him to judge whether the account were too large or not ; and the most a Court could do in such a case, if the Comptroller refused to entertain it, would be by *mandamus* to direct him to audit and allow what was proper.

The discretion claimed for the Comptroller exceeds that given him by the statute—see Thompson's Dig., 31 ; and is certainly not intended to be given where the law itself specifies what shall be allowed, as in the cases of officers of the Court.

The Court, then, having the power to issue the writ of *mandamus* against the Comptroller in a proper case, the only question remaining is, whether this is a proper case for its exercise. The facts are not disputed. The relator performed the services, charged for them only what the statute allows, and presented his accounts duly authenticated. The case was one of assault and battery, in which the State failed. The costs, therefore, were chargeable against her, unless the law provides to the contrary. The Comptroller insists that the statute, (Thomp., 522,) which directs that in cases of assault and battery, &c., a prosecutor shall be set at the foot of the indictment, who shall be liable for the costs, if the prosecution fails, does provide to the contrary. But this cannot be so. (The sheriff must execute the command of the Court. It is not his province to inquire whether it has been issued irregularly or improperly.) To

require a prosecutor, who shall be liable for costs, is not to say the officers shall be denied their costs, if one is not set at the foot of the indictment.  The statute merely enjoins a duty upon the Grand Jury, and the officers should not suffer, if they fail to perform it.  He has no option, but must execute the command of the Court.  Now, shall he be made the victim of the neglect of the Grand Jury ?— Shall he suffer wrong and injustice in the loss of his fees, because others have not done their duty ?  The statute could not intend any such mischief.

This much is certain—the sheriff could not do otherwise than perform the services required of him, and in such case he acquires a right against some party to his costs.  To deny him that right, is to do him injustice.  Now, to what party can he look for these costs ?  To none other than the State, for she was the party that failed before the Court.  As there is no right without a remedy, and no remedy in this case but by *mandamus*, it seems clear that the Court below did not err in awarding it.

DOUGLAS, C. J.

This is a suit instituted in the Circuit Court of the Middle Circuit of this State, wherein Alfred A. Fisher, Sheriff of Leon County, by petition complains, that at the October Term of that Court, in the year 1848, one Elijah B. Clark was indicted by the Grand Jury for an assault and battery : that the petitioner rendered whatever service was required of him in the prosecution of said Clark, for which service he was entitled to the fees given by the statute, which, according to his account annexed, amount to $58 52-100.  That said Clark was acquitted, and said fees are properly chargeable to the State, there being no prosecutor endorsed on said indictment.  That he, the petitioner, had presented the said bill of costs to Simon Towle, Comptroller of the State, to be audited and paid, but the said Towle refused to allow the same.  Wherefore, he prayed the Court to grant a writ of *mandamus* to be directed to the said Simon Towle, Comptroller, &c., commanding him to allow and pay the said bill of costs, or else to show good and sufficient cause why the same should not be allowed and paid.

It does not appear by the record whether the alternative *mandamus* so prayed for, was granted or not.  But on the 9th November, 1849,

the said Simon Towle, Comptroller, filed his answer, admitting the facts charged in the petition, so far as related to the rendition of the services and the correctness of the account exhibited therefor, but denying that the State was bound to or ought to pay it, and shows for cause that the law requires " in all cases of assault and battery, trespass and libel, that a prosecutor shall be set at the foot of the indictment, who shall be liable for costs on failure in the prosecution." That the account of the relator was " for costs" in a case of assault and battery, coming precisely within the provisions of that law, that a prosecutor should, therefore, have been set at the foot of the indictment, and he would be the party liable to pay the account of the relator and not the State." The Circuit Court held the answer of the respondent insufficient, and awarded a peremptory *mandamus* against him the said Simon Towle, Comptroller, &c., commanding him forthwith to audit, allow and pay the said bill of costs of said petitioner, amounting to the sum of $58 52-100. From which judgment the said defendant appealed to this Court, and has assigned for error—

First. The Court erred in awarding a writ of *mandamus* in this case.

Second. The Court erred in deciding that it was a proper case for *mandamus*.

We deem it proper to state " *in limine*" in this case, that the Comptroller was right as to the requirement of the statute—that a prosecutor should be set at the foot of the indictment in such a case, nor is the provision, according to our view of the matter, merely directory; it is a positive requisition, and an indictment returned without a prosecutor endorsed upon it, is invalid, and might be quashed on motion ; but if the defect escapes the notice of the defendant and his counsel—or if they do not choose to avail themselves of the error; and process issues upon it, the officer of the Court is not bound to inquire into the regularity of the proceedings ; his duty is to obey the mandate of the writ. Tarlton vs. Fisher, 1 Douglas, 671. Camp vs. Moseley, et al., 2 Flor. Rep., 195. Gott vs. Mitchell, 7 Blackford Reps., 270. Parsons vs. Loyd, 3 Wilson's Reps., 345, 376. In this last case, Lord Ch. J. De Gray remarks in substance, that the plaintiff was illegally imprisoned under a judgment sued out against him, which is a mere nullity—he has been unlawfully injured, and must have a remedy—but he has none against the officer

who is not to exercise his judgment touching the validity of the pro-
cess in point of law, but is obliged to obey the commands of the
Courts, &c. The case in 7 Black., 270, goes further, and shews,
that if the Sheriff has notice of the irregularity of the process, still if
the writ was legal upon its face and showed jurisdiction in the jus-
tice, the officer was bound to obey it. Here the process was regular,
no question arose about it, the Sheriff was bound to obey it. To
withhold the payment of his fees, for the cause assigned, would be
to punish him for the wrong of some one else, if indeed any fault
was committed, but *non constat*—that any was committed ; the whole
may have been the result of inadvertance. The fees of the Sheriff,
at all events, so far as appear by this record, should have been al-
lowed and paid, and the Comptroller, we have no hesitation in say-
ing, came to a wrong conclusion, when he decided that the State
ought not to pay these costs, and therefore rejected the account.

But the more important question is, whether it is competent for
this Court to correct the error—in other words, is this a proper case
for a *mandamus*. " The principle is admitted (said Tucker, Justice,
in the Attorney General vs. Turpin, 3 Hen. and Mun., 557,) by
every writer on the law of Nations, that the Commonwealth can
neither be made liable to its own citizens in its own Courts, beyond
the tenor of its own engagements, nor be sued in its own Courts in
any other manner than that expressly permitted by law. "But although
a State cannot be called upon to defend itself in a foreign Court, or
in its own Courts, without its consent, the honor and justice of every
State require that an independent tribunal should be appointed within
itself, to decide upon all claims against the public, and not leave them
to the decision of a popular assembly, improper from the nature of
its existence, as well as from their numbers, to decide upon contracts
made, that is to say, to decide what the contracts are, and whether
they will perform them or not. Pendleton, President in Comm. vs.
Beaumarchais, 3 Call, 369. The Legislature of Virginia has pro-
vided such a tribunal, by allowing an appeal from the auditor of pub-
lic accounts to the judiciary. Ibid. That is, by a petition of the
party who may feel himself aggrieved by a decision of the auditor, to
the High Court of Chancery or the Superior Court of law holden in
the city of Richmond, according to the nature of the case, for redress.
2 R. C., 1819, page 2, sec. 6. 1 Robinson's Prac., 33.

The *mandamus* being in its nature what is termed a prerogative writ, issuing only from the tribunal which represented judicially the King himself, was extended originally to matters rather of a general public nature, than to such as affected the rights of a particular subject, as to cases of some breach of the peace, disobedience of law, or neglect of official duty, and, therefore, we are to construe, rather as an extension than as a restraint of its original uses, what is given by Comyn, Title Mandamus A, where he says, " The Court of King's Bench has power, by writ of *mandamus*, to correct all extra judicial errors which tend to a breach of the peace, oppression of the subject, or other mis-government." But long subsequently to Comyn, we find the Court of King's Bench, 3 Burr, 1267, remarking, that " within the last century, it has been liberally interposed, for the benefit of the subject, and the advancement of justice." This case, which was decided in 1762, was a *mandamus* to trustees, to admit a dissenting minister ; (2 Term Rep., 259,) and Lord Mansfield observed, that " a *mandamus* is a prerogative writ, to the aid of which the subject is entitled, upon a proper case previously shown to the satisfaction of the Court. It was introduced to prevent disorder from a failure of justice, and defect of police ; therefore, it ought to be used upon all occasions, where the law has established no specific remedy, and where in justice and good government there ought to be one." This remark, however, is to be qualified by the cotemporaneous observation of the same learned judge, which he frequently repeated, that " it was a very beneficial writ, but that the best mode of preserving it, was to be sparing in the use of it." And the fact that there is no other remedy does not seem to be sufficient in every case to justify the use of it ; for in Rex vs. The Justices of Wilts, 2 Chitty's Reps., 257, where a *mandamus* was refused, Bailey, Justice, in reply to the counsel, that there was no other remedy, said : " There are many cases where there is no other remedy against the Sessions, where we should not interfere ;" and in Wilson vs. The Supervisors of Albany, 13 John. Rep., 414, the Court, in refusing a *mandamus*, said : " It may be a hard case, and the party may be remediless, but that consideration cannot induce us to grant an unfit remedy." The principles which govern the Courts in issuing writs of *mandamus* (said Ch. Justice Tilghman, in Griffith vs. Cochron, 5 Binney's Reps., 103,) are well understood, and the counsel who argued this case

27

have not differed in that respect.   Where a ministerial act is to be done, and there is no other specific remedy, a *mandamus* will be granted to do the act which is required; but where the complaint is against a person who acts in a judicial or deliberative capacity, he may be ordered by *mandamus* to proceed to do his duty, by deciding according to the best of his judgment; but the Court will not direct him in what manner to decide.   This was the principle adopted by the Supreme Court of the United States, in the case of the United States vs. Lawrence, 3 Dallas' Reps., 42, where it was sought to compel a District Judge to issue a warrant to arrest an alleged deserter from the French naval service, under a treaty stipulation, and in which it was the clear and unanimous decision of the Court that the District Judge, having acted judicially in deciding that the evidence was not sufficient to authorize his issuing a warrant, the Supreme Court, however it might differ in opinion from the Judge as to the sufficiency of the proof, had no power to compel him to decide according to the dictates of any judgment but his own.   In the case of the Life Insurance Company of New York vs. Adams, 9 Peters' Reps., 602, the same principle is recognized, and Chief Justice Marshal said : " On a *mandamus*, a Superior Court will never direct in what manner the discretion of an Inferior Court shall be exercised, but will in a proper case require the Inferior Court to decide.   In the case of The Commonwealth vs. The Judges of the Common Pleas of Phila. Co., 3 Bin. Reps., 273 to 286, the Court held, that " a *mandamus* cannot go to an Inferior Court to compel them to make any particular decision, but merely to decide."— " Where a Judge acts in his judicial capacity, as in deciding on the propriety of issuing a warrant, the Supreme Court will not grant a *mandamus* to compel him to decide according to any judgment but his own." 6 Bac. Abr. Ed. of 1848, page 437, title Mandamus.

In this case, The United States vs. Lawrence, 3 Dallas, 42— Ex parte Roberts, 6 Peters, 216—Ex parte Davenport, 6 Peters, 661.   Life & Fire Insurance Company of New York vs. Wilson, 8 Peters, 291—Ex parte Martha Bradstreet, 8 Peters, 588—Life & Fire Insurance Company New York vs. Adams, 9 Peters, 573— Postmaster General vs. Trigg, 11 Peters, 173—Ex parte Jesse Hoyt, 13 Peters, 279, were cited.

A Court may be compelled by *mandamus* to proceed to judgment,

but it must exercise its discretion as to what that judgment shall be. The Board of Police of Attala Co., vs. Grant, 9th Smedes & Mar. 90. Where the Court or officer has a discretion, the Supreme Court will not grant a *mandamus* to control that discretion. 6 Bac. Abr. Ed., 1848, page 420, title Mandamus, and authorities there cited.— In Ex parte Hoyt, 13 Reters, S. C. R., 290, Mr. Justice Story, delivering the opinion, said: "It has been repeatedly declared by this Court, that it will not, by *mandamus*, direct a Judge what judgment to enter in a suit, but only will require him to proceed to render judgment."

There seems to have been at one period much uncertainty and confusion in regard to the application of the writ of *mandamus*, but it arose from the character of the persons to whom the writ was to be directed, and the objects sought to be accomplished by it, rather than from the nature of the acts complained of. The broad distinction between a direction to an inferior tribunal to act, and a direction to it how to act, seems to have been at all times well observed, at least until very lately. Judges of Oneida C. P. vs. The People, 18 Wendell, 96.

We have noticed that in the case of The People vs. Superior Court of New York, 5 Wendell, 114, Mr. Justice Sutherland, who delivered the opinion of the Court, advanced the following propositions:

*First.* That a writ of *mandamus* lies where a party has a legal right, and no other appropriate remedy.

*Second.* That it does not lie to an inferior tribunal, where such tribunal has the right of exercising its discretion.

*Third.* That the discretion which the Supreme Court cannot control is one governed by no fixed legal principles.

*Fourth.* That in all cases where an inferior Court is bound to proceed according to established legal principles, and it is alleged that an error has been committed, the Court has power to issue a *mandamus*—and if error has intervened, the same obligation exists to issue the writ, as to reverse or affirm a judgment upon a writ of error.

This case, which was a *mandamus* to the Superior Court of New York, requiring it to vacate an order made by it for a new trial, on account of newly discovered evidence, is disapproved and overruled

in the case of The Judges of the Oneida C. P. vs. The People, above cited, and all except the second proposition—on which the Court in the last case bases its decision—triumphantly refuted. The former is said to be the first case in which a manifest tendency is disclosed to extend jurisdiction by *mandamus*, over the judicial acts of an Inferior Court, which was acknowledged as acting within the scope of its own powers ; and the Court of Errors, in reviewing it, remark upon the fourth proposition, that where the action of a Court is prescribed " by established legal principles," it is not a case of legal discretion, but of legal necessity, and can only occur where questions of law, and not questions of fact, are involved.

The case of Decatur vs. Paulding, 14 Peters S. C. Reps., 521, was an application for a *mandamus* to the Secretary of the Navy, to compel him to pay to Mrs. Susan Decatur a pension which she claimed under a resolution of Congress. Mr. Justice Catron, after stating reasons somewhat at length why the writ ought not to have been issued, said, " The origin of the opinion that public money could be reached through such instrumentality, is of recent date. Its history will be found in the case of Stockton & Stokes vs. the Postmaster General ; money was not there asked in a direct form, and the Court put the case on the express ground that the defendant " was not called upon to furnish the means of paying any balance that was awarded against the Department by the Solicitor of the Treasury. He was simply (say the Court) required to give the credit," and this was no more an official act, than the making of an entry by the clerk, by order of a Court of justice ; it was in every just sense a ministerial act." Ibid, 516, and 12 Peters, 614. " Had it not been placed on this narrow ground the decision could not have been made."

In the case of Brashear vs. Mason, which was another attempt to compel the Secretary of the Navy, by means of a writ of *mandamus*, to pay a claim against the Government—the Supreme Court of the United States say, " In the case of Mrs. Decatur vs. Paulding, 14 Peters, 497, it was held by this Court, that a *mandamus* would not lie from a Circuit Court of this District to the Secretary of the Navy to compel him to pay a sum of money claimed to be due to her as a pension under a resolution of Congress. There was no question (say the Court) as to the amount due, if the plaintiff was properly entitled to the pension, and it was made to appear affirmatively on

the application, that the pension fund was ample to satisfy the claim. The fund was also under the control of the Secretary, and the money payable on his own warrant.   Still the Court refused to inquire into the merits of the claim of Mrs. D. to the pension, or to determine whether it was rightfully withheld or not by the Secretary, on the ground that the Court below had no jurisdiction over the case, and therefore the question is not properly before this Court on the writ of error.   The Court say " that the duties required of the Secretary under the resolution were to be performed by him as the head of one of the executive departments of the government, in the ordinary discharge of one of his official duties ; that, in general, such duties, whether imposed by act of Congress or by resolution, are not mere ministerial duties ; the head of an executive department of the government, in the administration of the important concerns of his office, is continually required to exercise judgment and discretion, and the Court could not, by *mandamus,* act directly upon the officer, and guide and control his *judgment* or discretion in the matters committed to his care in the ordinary discharge of his official duties."   " The Court distinguish the case from Kendall vs. the United States, 12 Peters, 524, where there was a *mandamus* to enforce the performance of a mere ministerial act, not involving on the part of the officer, the exercise of any judgment or discretion."   And the principle of the case of Mrs. Decatur was held to be decisive of that of Brashear vs. Mason.   See 6 Howard's S. C. Reps., 101, 102 ; and so we deem it decisive of this case.

The Comptroller of this State, in the administration of the important concerns of his office, is continually required to exercise judgment and discretion, and this Court cannot, by *mandamus,* act directly upon him and guide and control his judgment and discretion in the matters committed to his care in the ordinary discharge of his official duties.   The question in the case of Mrs. Decatur, as here, was one purely of law ; was she entitled to the pension claimed ? there was no question as to the amount due, if she was properly entitled to the pension, and by reference to the case it will be seen that this question rested entirely upon the construction of an act and a resolution of Congress.   To show that the Comptroller has discretion and judgment to exercise, it is only necessary to refer to the act creating the office, act of July 23, 1845, pamphlet laws, pages 16, 17.   Thomp-

son's Digest, pages 31, 32, Nos. 5 and 6, by which it is made "the duty of the Comptroller to examine, audit, adjust and settle the accounts of all the officers of this State, and any other person or persons or corporation, in any wise entrusted with, or who may have received any property, funds or moneys of this State, or who may be in any wise indebted or accountable to this State for any property, funds, or moneys, and require such officer, person or persons, or corporations to render full accounts thereof, and to yield up such property or funds according to law, or pay such moneys into the treasury of this State, or to such officer or agent of the State as may be appointed to receive the same, and on failure to do so, to cause to be instituted and prosecuted, proceedings, criminal or civil, at law or in equity, against such person or persons or corporation, according to law."

" The Comptroller of this State may demand and require full answers on oath from any and every person, party or privy to any account, claim or demand against or by the State, such as it may be his official duty to inquire into, and such answers he may require to be in writing and to be sworn to before himself or before any judicial officer, or justice of the peace, or clerk of any Court of this State, so as to enable said Comptroller to decide as to the justice or legality of such account, claim or demand." To decide, of course requires reflection—the exercise of judgment and discretion ; it is not a mere ministerial duty. Discretion implies " knowledge and prudence, that discernment which enables a person to judge critically of what is correct and proper, united with caution ; nice discernment, and judgment directed by circumspection."

Coinciding in opinion with that high tribunal whose authority we have just now invoked, that it is not the province of the Court below or of this Court to control the exercise of that judgment and discretion, and that the remedy here sought is inappropriate, we are clearly of opinion that the judgment of the Court below should be reversed. The remedy of the party, if the views which this Court have expressed, and the reasons given for them, do not satisfy the Comptroller that he ought to pay this claim, is a memorial to the General Assembly, which has power to afford him relief. But we entertain the hope that what in right and justice appertains in this behalf, will be done without the necessity of the relator's resorting to that pro-

ceeding. And we take occasion further to remark that as the questions presented in this case had not before been so made as to be authoritatively decided in this State, it was proper that the Judge to whom application was made for the writ in this case should have granted it: that they might be brought here to be discussed and settled.

The judgment of the Court below is reversed, and the cause remanded with directions to that Court to dismiss the writ.

*Per curiam.*