Bissell, J.,
delivered the opinion of the court.
During the late unpleasantness sometimes called the “ Ute War,” one Moses L. Howell furnished the military authorities of the state with 26 horses, which were used in repelling the invasion of the hostile tribe. The horses were delivered under what is called in the pleading a “contract” which was executed by Howell on his own behalf, and by Chapman, an assistant adjutant general, who assumed to act for the state. The state exercised the option granted by the vendor, bought the horses, and paid for them. The paper contained a clause which substantially provided that, if the state should use the horses for any time prior to purchase, *531 Howell should receive a compensation of two dollars per day per horse for the time during which they were used. The horses were in service 27 days before they were paid for under the option. If the agreement were a legal and enforceable one, Howell would be entitled to recover $1,404. When the state paid the purchase money, Howell’s right to insist on the price named for the hiring was not waived by his acceptance of the warrants by which it was settled. After the war was over, Howell made out a claim against the state for the $1,404, presented it to the adjutant general, who approved it, and then laid it before the military board for their action. This board seems to have done nothing with it; at least, the petition and alternative writ state that the board declined to act on the claim. Failing to secure favorable action in the matter, Howell filed his petition in the district court of Arapahoe county to procure a mandamus against the members of that board. The petition and the alternative writ present a double aspect. The petitioner seeks to compel a particular action on the part of the board, and likewise to compel them to act in the premises as auditors on behalf of the state. The board demurred, the demurrer was sustained, and the proceeding was dismissed.
The constitutional independence of the three departments of our governments, both state and national, has been a fruitful source of judicial discussion from the very earliest times. By far the larger part of the controversies has resulted from the absence of a forum in which the citizen might litigate his disputes with his own government. While there has been considerable difference among the courts with reference to the powers of the judiciary to control executive action, it has, ever since the decision by Chief Justice Marshall, in Marbury v. Madison, 1 Cranch 137, in 1803, been prettj1- generally conceded that executive action, which is purely ministerial in its character, and requires the exercise of no political authority or discretion, may be controlled through the high prerogative writ of mandamus. The chief inquiry is always whether the act which the relator seeks to *532 compel the executive to perform is purely ministerial, or one with regard to which he is clothed with power to exercise his judgment and discretion. The reasons and arguments on which the rule rests have been so recently expressed by our own supreme court that it would seem an act of supererogation to restate them. It is enough to announce the rule, and to follow what has been heretofore so well declared. State v. Chase, 5 Ohio St. 528; People v. Brooks, 16 Cal. 11; Bryan v. Cattell, 15 Iowa, 538; Magruder v. Swann, 25 Md. 173; Greenwood Cemetery Co. v. Routt, 17 Colo. 156.
The only matter to determine in this branch of the case is whether the relief which the relator sought would result in compelling the military board to do an act as to which they were clothed by the statute with discretion. Of this there can be but little question. The military board consists of the commander in chief, who is the governor, the adjutant general, the inspector general, and judge advocate general, and the senior brigadier general, commanding the military forces of the state. Vouchers for military expenses are to be paid by the adjutant general upon settlement and audit by that board, and thus only. There, is no statutory authority conferred upon the military officers who may be engaged in the field to bind the state for the supplies which they may procure, nor for the material which they may require, for the troops. The only plan marked out by the statute contemplates the issuance of vouchers by the officers to whom the supplies may. be furnished, the settlement of these accounts by the military board, and their ultimate payment by the adjutant general. Evidently the duty imposed upon that board is that of determining the character and extent of all proper claims against the state. There is no appeal from such decision, and no mode provided by which their acts may be reviewed. Under these circumstances, it is evident that the relator was not entitled to that part of the relief which he prayed, to compel the military board to audit and allow his claim. To this extent the judgment of the court in sustaining the demurrer was evidently right.
*533 As to the other proposition involved in the controversy, the court was clearly wrong. According to the averments of the alternative writ, it appears that the military hoard has taken no action whatever on the claim which Howell presented in the form of a voucher issued by the officer with whom he attempted to contract. That it was the duty of the board to pass on the accuracy and correctness of that voucher, .and to either allow or disallow it, is exceedingly plain. It is no answer to a proceeding by a mandamus against an officer who acts in a judicial or deliberative capacity to say that the thing which he is required to do calls for the exercise of his judicial power. If the writ seeks to compel him to do the act in a particular way, it is enough to respond that the act requires the exercise of judicial authority; but the officer may always be compelled to proceed to do his duty according to his best judgment, although the court will not assume to direct him how he shall decide. In the language of Chief Justice Marshall: “ On a mandamus a superior court will never direct in what manner the discretion of an inferior tribunal shall be exercised; but they will, in a proper case, require the inferior court to decide.” Insurance Co. v. Adams, 9 Pet. 573 ; Towle v. State, 3 Fla. 202; Board v. Arles, 15 Tex. 72; Board v. Hendrick, 20 Tex. 60. The relator, then, had the right to compel the board to take some action on the voucher which he presented. Presumably, from their failure to allow the claim, that board will reject it when they take action. The value of the remedy to which the relator is entitled in the proceedings admits of considerable question. His right to enforce action by the board is clear. Whether it is expedient for him further to pursue his right to what will probably prove to be a barren remedy it is for him to determine. It is quite possible that on the coming in of the answer by the board it will become evident that the board did act, and rejected the claim which Howell now seeks to enforce. Should this be true, it would be a perfect answer to the writ, and no further proceeding could be had, since it is well settled that the citizen cannot by this indirect *534 proceeding bring an action against the sovereignty in which he lives. The judgment sustaining the demurrer must accordingly be reversed, and the case remanded.

Reversed.