## DETERMINED IN THE

# THIRD DEPARTMENT

### AT

## GENERAL TERM

### September, 1892.

JAMES TEN EYCK AND OTHERS, AS TRUSTEES OF MASTERS' LODGE No. 5, F. A. M., OF THE CITY OF ALBANY, PLAINTIFFS, v. THE RECTOR AND INHABITANTS OF THE CITY OF ALBANY IN COMMUNION WITH THE PROTESTANT EPISCOPAL CHURCH IN THE STATE OF NEW YORK, DEFENDANT.

*Lease — a new granite block pavement is a "permanent improvement."*

A church corporation in the city of Albany was, as lessee, in possession of a certain house and lot, situated in that city, under a lease for thirty years, executed in 1859, which provided that the lessee should pay the taxes, "and also all assessments for paving, flagging or repairing the streets adjoining said premises, but assessments, if any shall be made, for opening streets, squares, or for other public purposes of an extraordinary character, or for permanent improvements, shall be paid by the said parties of the first part."

When the lease was made, and for more than thirty years subsequent to that time, the streets adjoining the premises were paved with cobble-stones. In 1889 the lease was renewed for five years, but upon the same terms, except that there was a reduction of the rent.

In 1891, under an act of 1889 amending the city charter, the city paved one of the streets adjoining the premises with a granite-block pavement, and assessed on the premises in question a part of the expense thereof, amounting to almost two years' rent.

Upon a submission of the controversy between the landlord and tenant as to which, under the language of the lease, must pay this assessment, it was

*Held,* that it fell upon the owner to do so.

That it was the tenant's duty to pay for all repairs to the existing pavement.

That the laying of a new pavement of a different material, at an expense equal to two years' rent, must be held to constitute a "permanent improvement."

That the court will take judicial notice that a new granite pavement is a permanent thing, lasting and not subject to change. (HERRICK, J., dissenting.)

SUBMISSION of a controversy between James Ten Eyck, John H. Quinby and Edwy L. Taylor, as Trustees of Masters' Lodge No. 5, F. A. M., of the city of Albany, as plaintiffs, and the Rector and Inhabitants of the City of Albany in communion with the Protestant Episcopal Church in the State of New York, as defendants, without action, upon an agreed statement of facts, under section 1279 of the Code of Civil Procedure.

The question presented by the submission was whether, under a lease of a certain house and lot in the city of Albany, the defendant was obligated to pay an assessment for repaving the street in front of the lot with a granite-block pavement, which was laid thereon, under the provisions of the thirtieth section of the charter of the city of Albany (chap. 298 of the Laws of 1883, as amended by chapter 114 of the Laws of 1889). The street in question, which was paved with granite blocks, was known as Maiden lane, in the city of Albany, and ran westerly from the Hudson river, crossing Broadway, to Eagle street, and being nearly parallel to State street.

*Arthur L. Andrews*, for the plaintiffs.

*Abraham Lansing*, for the defendant.

PUTNAM, J.:

Defendant is in possession of premises situated on Maiden lane and Lodge street in the city of Albany, under a lease executed on April 30, 1859, for a term of thirty years, at a yearly rent of $500. Said lease contains the following covenant: "During the continuance of the said term, the said party of the second part shall pay all taxes and water rents, which shall be lawfully assessed or charged upon the said premises, and also all assessments for paving, flagging or repairing the streets adjoining said premises, but assessments, if any shall be made, for opening streets, squares or for other public purposes of an extraordinary character or for permanent improvements, shall be paid by the said parties of the first part."

On April 25, 1889, said lease was renewed for five years, at the annual rent of $400, but with the same conditions and covenants contained in the original lease.

At the time of the execution of said lease the streets known as Maiden lane and Lodge street had been laid out and graded "under the laws and ordinances applicable to the city of Albany, and had been and were then paved and curbed and the expenses thereof had been paid for by the owners of the property adjoining said streets and by the owners of the property in question to the extent of their proper proportion thereof. * * * The pavement of the roadway, as so paved was of cobble-stone, which pavement, from use and the nature of the soil upon which the same was laid, required frequent, and, usually annual, repair ; the sidewalks of said streets had been and were at the said date laid with flagstones. Cobble-stones were the pavement in universal use in the city at that time, and no other kind of pavement was then generally known in cities."

On the 8th of April, 1889, an act was passed by the legislature amending chapter 298 of the Laws of 1883, entitled an act to provide for the government of the City of Albany, under which the common council of said City of Albany, in the summer and fall of the year 1891, caused Maiden lane to be repaved with granite block pavement and suitable cross-walk stones and recurbed, and the officers of the city assessed the expense of the work, labor and services and materials for such work upon the property adjoining said street, and in part upon the property described in said lease. The said premises were duly sold for default in the payment of said assessment, which amounted to $799.79, being the amount assessed, with interest and charges.

The plaintiffs claim that the defendant, under the above-quoted clause of the lease, is legally bound to pay the aforesaid assessment. The defendant insists that it is only bound to pay for ordinary repairs to the street, and that the said assessment being for unusual and extraordinary, as well as permanent improvements, the assessment, therefore, under the lease, is for the plaintiffs to pay.

If the covenant of the defendant had ended with its promise to pay "*all assessments for paving, flagging or repairing the streets adjoining said premises,*" no serious question would arise as to its liability, although the assessment in question was made under the

provisions of a statute passed subsequently to the date of the lease. (*Post* v. *Kearney*, 2 Comst., 394.)

"Paving" is defined to be the laying of streets with pavement, and, assuming that this word in the lease has the same meaning as "*repaving*," the covenant above to pay for paving, flagging or repairing, if unmodified by the subsequent part of the sentence, might be construed as an agreement to pay for all that constitutes paving — the material of which a pavement is formed as well as the work of placing it. But that part of the clause above quoted, in reference to defendant paying for assessments, is modified by the balance thereof, viz.: "*But assessments, if any shall be made, for opening streets, squares or for other public purposes of an extraordinary character, or for permanent improvements, shall be paid by the said parties of the first part.*"

The covenant of defendant, therefore, taking the whole sentence together, is an agreement to pay all assessments for paving, flagging or repairing streets adjoining said premises, except assessments for opening streets, squares *or for other public purposes of an extraordinary character or for permanent improvements*, which shall be paid for by the parties of the first part.

The assessment for repaving and recurbing Maiden lane in 1891 was doubtless an assessment for a public purpose, and the question to be determined is, was it an assessment to pay for work of an extraordinary character or in the nature of a permanent improvement? Extraordinary is defined to mean beyond or out of the common order or rule; not usual, regular or of a customary kind; not ordinary; remarkable; uncommon; rare.

It appears that when the lease was made in 1859 the streets adjoining such premises, and generally in the city of Albany, were paved with cobble-stones, and I infer from the case that they remained in that condition, with ordinary repairs, until the repaving in question in 1891, a period of over thirty years. At this time, in 1891, the whole pavement was removed and replaced with granite.

The question submitted is not free from doubt, and I have had some hesitation in reaching a conclusion. I think, however, that the covenant contained in the lease, on the part of the defendant, was not one to pay assessments for removing a pavement already existing and to lay down a new and expensive pavement with

entirely different materials. I think the agreement should be construed to mean that defendant would make the ordinary repairs, keeping the pavement existing when the lease was made in proper condition.

The new granite pavement for which the assessment was made was a *repavement* of the street in place of the old pavement that had remained over thirty years. Hence it was a rare, unusual, infrequent kind of work. It was not ordinary; it was uncommon. The fact that the new pavement was put down after using the old pavement for over thirty years shows that it was an extraordinary repair. The assessment was also for a public purpose of an extraordinary character because of its amount. The annual rent reserved in defendant's lease was $400. The assessment was for $800, twice the amount of the annual rent. A repair costing that amount cannot be deemed ordinary The assessment, therefore, was for a public purpose of an extraordinary character.

I think this construction of the covenant in question will carry out what may be deemed to have been the intent of the parties to the contract. I also am of the opinion that the assessment may properly be considered as one made by the city to pay for a permanent improvement. The old cobble-stone pavement was taken up and replaced by granite. This pavement is of a permanent character. "Permanent" is defined to mean not temporary or subject to change; abiding; remaining; fixed or enduring in character, state or place. I think that the court may take judicial notice that the new granite pavement of the character described in this case is permanent, lasting and not subject to change.

In *Twycross* v. *Fitchburgh Railroad Company* (10 Gray, 293), Justice THOMAS, in delivering the opinion of the court, remarked (page 295), in reference to a new pavement laid in front of the plaintiff's premises, referred to in the opinion: "It is a permanent improvement of the estate, the benefit of which is to be found in the increased value of the estate, and in the increased rent which it would permanently command."

I conclude, therefore, that under the clause in the lease, to which our attention is called, the plaintiff was liable to pay for the new pavement in question, and that, therefore, the defendant should have judgment on the case submitted, with costs.

MAYHAM, P. J.:

The questions in this case grow out of the construction to be placed upon the following exception in the lease : " But assessments, if any shall be made, for opening streets, squares, or for other public purposes of an extraordinary character, or for permanent improvements, shall be paid by the said parties of the first part."

If this assessment comes within any of the above exceptions, it must be under that which exempts the lessee from the payment of taxes for permanent improvements. The street was paved with cobble pavement at the time of making and renewing the lease. That kind of pavement necessitated frequent relaying, paving or repairing, for which the lessee under the lease would be clearly liable    That kind of pavement was in universal use in the city of Albany at that time, and it seems that it required the authority conferred by chapter 298 of the Laws of 1883 to enable the common council to adopt the more permanent, but more expensive, kind of pavement known as Belgian block.

It is by no means probable that the parties to this lease, either when it was made or renewed, had in contemplation a repavement of this street with a pavement of this character. Nor do I think the language of the lease, which binds the lessee to pay " all assessments for paving, flagging or repairing the streets adjoining said premises," necessarily embraces this kind of repavement, especially when read in connection with the paragraph relating to " permanent improvements " above quoted.

By that paragraph or provision of the lease the lessee is exempted from taxes imposed for permanent improvements, and it is difficult to conceive of a more substantial or permanent improvement than that of paving a street with granite block. The lease does not, in express terms, require the lessee to pay for " repaving," but for " paving," which means when pavement is laid for the first time on a dirt road ; repaving is when an old pavement is replaced by a new one. If, by the conditions of the streets at the time of making or renewing the lease, there was no " paving " that could be required, the lessee was only the more secure from that burden, and the court cannot import into the agreement any word that could increase the defendant's liability.

If, therefore, that provision in the lease is to have any effect, it

must be applicable to the permanent improvement of paving this street with granite block. If this tax is imposed upon the tenant, it or the rector, by whom it is represented, would be required to pay for the use of the premises in 1891, about three times the amount of rent stipulated in the lease, a burden which should not be cast upon the defendant, unless by the clear terms of the lease it assumed that burden which I do not think it did.

I, therefore, concur in the conclusion reached by my Brother PUTNAM in this case, that the defendant should have judgment, with costs.

HERRICK, J. (dissenting):

The defendant is in possession of premises situated on Maiden lane and Lodge street in the city of Albany, under a lease executed on April 30, 1859, for a term of thirty years, at a yearly rent of $500. Said lease contains the following covenant: "During the continuance of the said term the said party of the second part shall pay all taxes and water rents which shall be lawfully assessed or charged upon the said premises, and also all assessments for paving, flagging or repairing the streets adjoining said premises, but assessments, if any shall be made, for opening streets, squares or for other public purposes of an extraordinary character or for permanent improvements, shall be paid by the said parties of the first part."

On April 25, 1889, said lease was renewed for five years, at the annual rent of $400, but with the same conditions and covenants contained in the original lease.

At the time of the execution of said lease the streets known as Maiden lane and Lodge street had been laid out and graded "under the laws and ordinances applicable to the city of Albany, and had been and were then paved and curbed and the expenses thereof had been paid for by the owners of the property adjoining said streets and by the owners of the property in question to the extent of their proper proportion thereof. * * * The pavement of the roadway, as so paved, was of cobble-stone, which pavement, from use and the nature of the soil upon which the same was laid, required frequent, and, usually annual, repair; the sidewalks of said streets had been and were at the said date laid with flagstone. Cobble-stones were the pavement in universal use in the city at that time, and no other kind of pavement was then generally known in cities."

On the 8th of April, 1889, an act was passed by the legislature amending chapter 298 of the Laws of 1883, "entitled an act to provide for the government of the City of Albany," under which the common council of said City of Albany, in the summer and fall of the year 1891, caused Maiden lane to be repaved with granite-block pavement and suitable cross-walk stones, and recurbed The officers of the city assessed the expense of the work, labor and services and materials for such work upon the property adjoining said street, and in part upon the property described in said lease. The said premises were duly sold for default in the payment of said assessment, which amounted to $799.79, being the amount assessed, with interest and charges.

The plaintiffs claim that the defendant, under the above-quoted clause of the lease, is legally bound to pay the aforesaid assessment. The defendant insists that under the aforesaid clause it is only bound to pay for ordinary repairs to the street, and that the said assessment is for unusual and extraordinary, as well as permanent, improvements, and the assessment, therefore, under the lease is for the plaintiffs to pay. The intent of the parties must be gathered from the language of the instrument if possible, and seemingly inharmonious and conflicting expressions must be reconciled. It seems to me that the evident intent was that the defendant should pay the expense or assessments for keeping the street adjoining the leased premises in proper condition; keeping them paved and in order.

The charter of the city of Albany (chap. 298 of the Laws of 1883, tit. 9 and 10) recognizes three classes of paving work upon its streets; "paving," when a pavement is laid for the first time upon a new street, or one theretofore having only a dirt road-bed; "repaving," where a street has once been paved and the old pavement is taken up and a new one laid in its place; and, "repairing," where the pavement is not entirely relaid, but defects in it are made good. The agreement to pay assessments here was part of the rent, and to confine the meaning of the word "paving" in the agreement to the signification attached to it in the charter of the city would render it of no value whatever, because, as appears from the submitted case, the street in question had been paved before the execution of the agreement between the parties hereto, and hence could not be

paved again; it could be repaved or repaired, but never "paved." If the construction contended for by the defendant is correct, it is released from all liability to pay that portion of the rent to be paid by taking care of the assessments for paving and repaving the streets, because, as we have seen, the street can never be "paved," and now being "repaved" with granite block pavement, no assessment can be made for repairing such pavement, the city being bound to keep it in repair at its own expense. (Chap. 298, Laws of 1883, tit. 10, § 3.)

If nothing had been said about paying assessments for paving the streets, we might then consider paving the street a permanent improvement for which the defendant was not to pay under that clause exempting it from paying assessments for permanent improvements. Probably paving or repaving a street may be considered a permanent improvement to property. But in giving or trying to give effect to all the language of an agreement, where in one sentence or part of a sentence there is a specific provision to pay assessments for various things specifically set forth, among others, for paving a street, and in another sentence or part of the same sentence assessments for specific purposes, including assessments for permanent improvements are excepted, it seems to me that the reasonable construction is to hold that paving streets was not a permanent improvement within the meaning and intent of the parties making the agreement. Paving in the agreement here must be construed in its broader signification as including "repaving;" as meaning, in fact, the laying of a pavement through or upon the street.

And paving assessments being specifically mentioned as assessments to be paid, they must be held to be excepted from the general terms of the clause, "but assessments, if any shall be made, for opening streets, squares or for other public purposes of an extraordinary character or for permanent improvements, shall be paid by the said parties of the first part." Neither can the assessment in question be excepted as one of an extraordinary character. First. Because paving or repaving streets is not an extraordinary thing to be done in a city; the amount of the assessment does not determine the question; it is the purpose for which the assessment is levied that must be of an extraordinary character; but the amount itself in this case, considering the frontage of the premises and the character of the pavement on the street paved, is not excessive or extra-

ordinary. Second. It does not come within the meaning of that phraseology, because it was before specifically mentioned as one of the assessments to be paid, and, therefore, cannot he held to be one of those assessments which, in the general terms set forth in the case, it is provided shall be paid by the parties of the first part to the agreement; general terms and expressions must give way to specific ones.

I am, therefore, of the opinion that under the clause in question the defendant must pay the assessment for the new pavement, and that the plaintiff should have judgment upon the case submitted, with costs.

Judgment on submitted case ordered for defendant, with costs.