Argued June 22, affirmed July 14, 1914.

# STOPPENBACK v. MULTNOMAH COUNTY.

(142 Pac. 832.)

**Counties—Debts—Constitutional Limitation—"Permanent."**

1. Within Article XI, Section 10 of the Constitution, as amended by Laws of 1913, page 9, permitting a county to contract debts in excess of $5,000 to maintain permanent roads within the county, the word "permanent" means continuing in the same state or without change that destroys form or character, remaining unaltered or unremoved, abiding, durable, fixed, lasting, and continuing, as a permanent impression.

**Bridges—Definition—Character as Highways.**

2. A bridge which is open to the entire community upon equal terms is a public structure spanning a hollow or extending across or over an artificial waterway, and, when connecting common thoroughfares, it constitutes a part of the highways with which it is united.

**Counties—Debts—Constitutional Limitation—"Permanent."**

3. A public bridge is permanent within Article XI, Section 10 of the Constitution, as amended (Laws 1913, p. 9), permitting a county to create debts in excess of $5,000 for permanent roads, when put up with the intention that it shall remain at least until rendered useless by decay or injury or destroyed by natural causes.

**Bridges—Construction—Liability of County.**

4. Under Article XI, Section 10 of the Constitution, as amended by Laws of 1913, page 9, permitting a county to create debts in excess of $5,000, for permanent roads "within the county," the amount of bonds to be issued by a county for a boundary bridge ought to be such a reasonable part of the estimated cost of the bridge and approach as the length thereof in that county bears to the length of the continuation of like structures in the adjoining county.

**Evidence—Judicial Notice—Coast and Geodetic Surveys.**

5. Judicial notice will be taken of United States coast and geodetic surveys.

[As to judicial notice of boundaries, see note in 82 Am. St. Rep. 439.]

**Counties—Bonds—Amount—Constitutional and Statutory Provisions.**

6. Where the United States coast and geodetic surveys show the distance from the boundary line between Oregon and Washington in the Columbia River to the Washington bank to be three tenths of a mile and the distance to the Oregon high-water line about a mile and a half, an issuance of bonds for $1,250,000 by the county in Oregon, while the Washington County issues bonds for $500,000, for a bridge, would not be beyond the just proportion of the construction cost authorized to be borne by Laws of 1913, page 255, nor violate Article XI, Section 10 of the Constitution, as amended by Laws of 1913, page 9, permitting a county to create indebtedness for permanent roads within the county.

**States—Debts—Constitutional Limitations.**

7.   Laws of 1913, page 701, authorizing the state to pay interest on bonds to be issued by a county for the erection of a bridge on the boundary between Oregon and another state, the bridge to be owned by, and a portion of the tolls collected to be paid to, the state, does not violate Article XI, Section 8 of the Constitution, providing that the state shall never assume the debts of any county unless created to repel invasion, suppress insurrection, or defend the state in war.

**Counties—Bonds—Statutory Provisions.**

8.   Laws of 1913, page 701, authorizing the issuance of bonds by a county for an interstate bridge and the payment of interest by the state, which becomes the owner of the bridge and assumes the management and maintenance thereof, is not void as transferring a part of the burden from the taxpayers of the county issuing the bonds to those of other counties.

**Taxation—Power to Tax—Delegation to County.**

9.   Every county is a *quasi*-municipal corporation to which the power to determine the amount of tax to be levied upon property within its limits may be delegated.

**Statutes—Local or Special Laws—Constitutional Provisions.**

10.   Article IV, Section 23, subdivision 7 of the Constitution, prohibiting special and local laws for laying, working, and opening highways, is impliedly repealed by Article XI, Section 7 of the Constituton, as amended by Laws of 1913, page 8, prohibiting the legislative assembly from creating any debt exceeding $50,000, except for permanent roads, for which the debt incurred shall not exceed 2 per cent of the assessed valuation of property.

**Taxation—Constitutional Provisions—Equality and Uniformity.**

11.   Laws of 1913, page 701, authorizing the issuance of bonds by a county for interstate bridges and the payment of interest and ownership and management of the bridge by the state, is not violative of Article I, Section 32, nor Article IX, Section 1 of the Constitution, providing for equality and uniformity of taxation.

**Statutes—Construction—Pari Materia.**

12.   Where statutes are not repugnant or inconsistent with each other they should be construed *in pari materia*, particularly when one is the complement of the other.

**Bridges—Establishment—Ownership by State.**

13.   Construing Laws of 1913, pages 255, 701, relating to the construction of interstate bridges and the issuance of bonds therefor by a county *in pari materia*, a bridge so constructed will be an interstate toll bridge, the title to which, when completed, will vest in the state.

**Constitutional Law—Judicial Powers—Policy of Legislation.**

14.   Whatever reason prompted the passage of a statute or prevented the exercise of the referendum is a legislative question, not subject to inquiry by the judicial department.

From Multnomah: THOMAS J. CLEETON, Judge.

In Banc.   Statement by MR. JUSTICE MOORE.

This is a suit to enjoin the issue of county bonds. The complaint charges in effect that the plaintiff, T. N. Stoppenback, is the owner of taxable property in Multnomah County, Oregon, and in other counties thereof; that complying with the provisions of Chapter 349 of the General Laws of Oregon of 1913, an election was held in the county named, November 4, 1913, at which a majority of all the votes polled upon the subject was cast in favor of issuing bonds of that county in the sum of $1,250,000, the money obtained from the sale of the securities to be used in constructing an approach to, and a bridge across, the Columbia River on a line from Portland, Oregon, to Vancouver, Washington, whereupon an order reciting such fact was duly entered, and pursuant thereto the defendants, Multnomah County, and Rufus C. Holman, D. V. Hart, and W. L. Lightner, its commissioners, unless restrained, will, without lawful authority and in violation of specified clauses of the state Constitution, issue and sell bonds, for the purpose specified, to plaintiff's irreparable injury, for the redress of which he has no plain, adequate, or complete remedy at law.

A demurrer to the complaint, on the ground that it did not state facts sufficient to authorize equitable intervention, was sustained, and, the plaintiff declining further to plead, the suit was dismissed, and he appeals.

AFFIRMED.

For appellant there was a brief over the names of *Mr. Elmer E. Coovert* and *Messrs. Winter, Wilson & Johnson,* with an oral argument by *Mr. John P. Winter.*

For respondents there was a brief with oral arguments by *Mr. Walter H. Evans,* District Attorney, and *Mr. Arthur A. Murphy,* Deputy District Attorney.

MR. JUSTICE MOORE delivered the opinion of the court.

An act of the legislative assembly, filed in the office of the Secretary of State, February 25, 1913, declares generally that when, under the provisions of any law of Oregon a bridge is constructed across the boundary of this state into an adjoining state, with public funds, the Governor of Oregon shall be and become a member and *ex officio* chairman of any official body designated for that purpose, to construct, maintain and operate such bridge and to fix the tolls thereon, but that none of the funds thus to be provided shall be used in excess of the just proportion of such construction and operation: Gen. Laws Or. 1913, c. 145. Three days after this act was filed another enactment was also filed in the same manner (Gen. Laws Or. 1913, c. 349), from which latter statute excerpts will be taken as follows:

"Bridges over rivers and bodies of water forming interstate boundaries are hereby declared and defined to be permanent roads and shall include approaches and viaducts leading thereto": Section 1.

"Counties are hereby authorized to borrow money for the purpose of constructing interstate bridges and to issue bonds to evidence such indebtedness": Section 2.

"Whenever any county in this state shall provide for the issuance of bonds for the construction of any bridge, bridge approach or viaduct to be constructed to and (or) over the boundary line of the state, or to and (or) over any stream, river or body of water constituting such boundary line, such county shall be en-

titled to deduct from the amount of the taxes that such county is required by law annually to collect and pay over to the state, * * the amount of the annual interest accruing from such bonds each year thereafter during the life of such bonds. For the purposes of this act the right, power and authority of the State of Oregon to construct bridges, viaducts and (or) roadways over navigable streams and the beds thereof, or upon any state lands is hereby granted and given to all the counties of the state'': Section 3.

''Such county, after making provision for such boundary bridge or viaduct, shall prior to the 1st day of January each year following the authorization of such bond issue or issues, notify the board of state tax commissioners of such bond issue, and shall state the amount of bonds, the number and value of the bonds sold thereunder and the amount necessary to meet the annual interest on such bonds. The said board of state tax commissioners shall thereupon allow such deduction as will cover such accruing interest. In consideration of such allowance and deduction for the payment of said annual interest upon said bonds as herein provided, the title to the said bridge, viaduct or roadway, and the full control of the same, shall upon completion of said boundary or interstate bridge, viaduct or roadway be, and become vested in the State of Oregon; such power of control to be exercised on behalf of the state by the Railroad Commission of Oregon'': Section 4.

''Said bonds shall bear interest at a rate not to exceed 6 per cent per annum, payable on the 1st days of January and July, and shall run not to exceed 30 years from the date of the respective issuance thereof. They shall have interest coupons attached to them, one coupon for each interest payment that will be made'': Section 16.

''The county court shall, at the time of making the annual tax levy upon the previous year's assessment, levy a tax on all the taxable property in the county, for the purpose of paying, and sufficient to pay the

71 Or.—32

outstanding bonds (at maturity) and the interest on all outstanding bonds for the current year'': Section 19.

Considering the objections to Chapter 349, *supra,* and the proceedings employed in pursuance of the provisions of the enactment in the order stated in the complaint, it is insisted that the issuance of bonds in the sum proposed will create a liability against and impose a debt upon Multnomah County in excess of $5,000, and hence the statute in question is violative of Article XI, Section 10 of the Constitution of Oregon, as amended November 5, 1912. The clause of the organic act referred to reads:

"No counties shall create any liabilities which shall singly or in the aggregate with previous debts or liabilities exceed the sum of five thousand dollars, except to suppress insurrection or repel invasion or to build and maintain permanent roads within the county; and debts for permanent roads shall be incurred only on approval of those voting on the question, and shall not either singly or in the aggregate with previous debts and liabilities incurred for that purpose exceed two per cent of the assessed valuation of all the property in the county": Gen. Laws Or. 1913, p. 9.

The complaint herein not having stated that the proposed issue of $1,250,000 of bonds of Multnomah County will exceed the prescribed rate of the assessed valuation of all the taxable property therein, it may reasonably be inferred that such securities, if put forth, will not transcend the specified limit. The state tax commission is required annually to equalize the assessed valuation of the several counties in Oregon; to combine the result thereof in convenient form, and deliver a copy thereof to the Secretary of State, who must cause the same to be printed and copies thereof transmitted to each county assessor and clerk: Section 3641, L. O. L., as amended; Gen. Laws Or. 1913,

p. 373.   An examination of the copy of the table thus compiled and printed shows that the assessed valuation of all the property in Multnomah County for the year 1913, when the issue of bonds was ratified by a majority of the votes cast at the election held for that purpose, was $341,541,954.76.   The proposed issue of *quasi*-municipal securities is therefore within the limit prescribed by the organic act.

1. It will be kept in mind that as the debt thus proposed to be created exceeds the sum of $5,000 it can only be incurred to build and maintain permanent roads within the county: Article XI, Section 10 of the Constitution.   In explaining the signification of one of the qualifying terms so employed it has been said:

"The meaning of the word 'permanent,' according to the lexicographers, is continuing in the same state, or without change that destroys form or character, remaining unaltered or unremoved, abiding, durable, fixed, lasting, continuing; as a permanent impression": 6 Words and Phrases, 5310.

The definition thus given is fully supported by the cases there cited: *Ten Eyck* v. *Rector, etc.*, 65 Hun, 194, 198 (20 N. Y. Supp. 157); *Follmer* v. *Nuckolls County*, 6 Neb. 204, 212; *Lowell* v. *French*, 6 Cush. (Mass.) 223, 224.

2. A bridge which is open to the entire community upon equal terms is a public structure, spanning a hollow or extending across or over a natural or artificial waterway, and when connecting common thoroughfares it constitutes a part of the highway with which it is united: Elliott, Roads & S. (2 ed.), § 27; *Brand* v. *Multnomah County*, 38 Or. 79, 94 (60 Pac. 390, 62 Pac. 209, 84 Am. St. Rep. 772, 50 L. R. A. 389); *Bowers* v. *Neil*, 64 Or. 104, 110 (128 Pac. 433); *Cascade County*

v. *City of Great Falls,* 18 Mont. 537, 540 (46 Pac. 437).

3. A public bridge being thus a part of a road which the structure makes passable, such span and approaches are permanent, within the meaning of the Constitution of Oregon, when they are put up with the intention that they shall remain, at least, until they are rendered useless by decay or injured or destroyed by natural causes. The bridge proposed to be built is undoubtedly a part of a permanent road.

4. The phrase "within the county," as used in the clause of the organic act under consideration, evidently does not mean that the entire highway must be constructed wholly within the county, in order to justify the issue of bonds to aid in its building and maintenance. The exception to the limit of a county's indebtedness which was authorized by an amendment of the Constitution was a recognition by a majority of the qualified voters of Oregon of the urgent need of better roads to secure which county bonds may be issued not exceeding a specified amount, thereby placing upon taxable property of a political subdivision of the state a burden which was supposed would be incurred for a laudable purpose. It is believed by many persons that the condition of highways affords a fair index to the interest taken by the public in the general welfare of a community, and that when rural roads are so improved as, at all seasons, to be reasonably fit for travel and the provident hauling of commodities to market, the development of the country will keep pace with such improvement. The betterment of a country road is not usually considered such an improvement of the highway that the cost of building and maintaining it may be assessed upon the abutting property, but the expenses incurred therefor are

ordinarily borne by and distributed over larger districts and collected as other taxes for county purposes. Some enthusiasts, however, suppose that the business in which they are engaged would be enhanced and the value of their property increased by building at public expense fine roads. To repress that confidence and to limit the area of taxing district for such purposes, the amendment of the organic act confines the activities of this class of persons to the boundary of the county in which they are interested, but it does not inhibit the continuation of the highway by another county. When the boundary of a county is not in a river or other body of water, and is crossed by a permanent road, consisting of a cut or a fill of earth or composed of other material, it is possible to compute the cost thereof up to such dividing line with reasonable certainty. Where, however, the boundary, as in the case at bar, is the middle channel of a great navigable river, the cost of building a permanent interstate bridge to such limit cannot accurately be determined until the structure is completed. This being so, the amount of bonds to be issued by Multnomah County ought to be such a reasonable part of the estimated cost of the bridge and approach as the combined length thereof in that county bears to the longitudinal dimensions of a continuation of like structures to be built in Clarke County, Washington. It appears that the board of county commissioners of that county, pursuant to legislative authority and a majority vote of the electors, determined to aid in the building of the bridge, and for that purpose had incurred a bonded indebtedness of $500,000 which issue of securities has been approved: *Rands* v. *Clarke County* (Wash.), 139 Pac. 1090.

5, 6. Judicial notice will be taken of United States coast and geodetic surveys: *Van Dusen Inv. Co.* v.

*Western Fishing Co.*, 63 Or. 7, 17 (124 Pac. 677, 126 Pac. 604). An examination of a topographical map, of the edition of July, 1905, representing a part of such survey of the Columbia River which will be crossed by the proposed bridge, disclosed that according to the scale thus given, the distance from Vancouver, Washington, to the boundary line as indicated on the plat is about three tenths of a mile, and about the same distance from such middle channel as there represented to the left bank of that stream at low water, from which latter line to that of high water is about a mile and a half. Multnomah County will be obliged to construct an approach over the land between the lines of high and low water at the place indicated, and also to extend the bridge to the boundary, to complete which a permanent road will thus be built within the county, and hence the issue of bonds in the sum named would not be beyond the just proportion of such construction cost (Chapter 145, Gen. Laws Or. 1913), or violate Article XI, Section 10, of the Constitution of this state.

7. It is contended that the interest which will accrue on the bonds when issued, the payment of which, in effect, must be borne by the state, shows that Chapter 349 of the General Laws of Oregon of 1913, which attempts to impose such an obligation, violates Article XI, Section 8, of the Constitution of Oregon. That clause reads:

"The state shall never assume the debts of any county, town, or other corporation whatever, unless such debts shall have been created to repel invasion, suppress insurrection, or defend the state in war."

This provision of the fundamental law evidently relates to a class of debts in contracting which the state originally takes no part. Such conclusion seems ap-

parent from the fact that debts created by a municipal corporation to preserve public tranquillity and to protect the lives and property of its citizens are excepted from the operation of the inhibition. It is the duty of a state to maintain order and thus to conserve the inalienable right of all its citizens to life, liberty and the acquisition of property. When that right is invaded in any county, town or municipal corporation, self-preservation of the political entity demands of its officers and citizens an immediate exercise of such reasonable local force as will be sufficient to restore public peace, and the coercion employed is usually resorted to and debts incurred therefor before the state generally intervenes. As the obligation in this respect originally rests upon the state, the clause of the organic act last referred to permits the legislative assembly to reimburse the county, town, etc., or to assume the debts that have been thus previously incurred. As the obligation was not previously created by Multnomah County or incurred without legislative consent, Chapter 349 of the General Laws of Oregon of 1913 does not, in any manner, trench upon Article XI, Section 8, of the Constitution of Oregon.

8. It is maintained that the attempt to issue the bonds in question and to impose upon the state the obligation annually to pay the interest accruing thereon, to become the owner of the bridge when built, and to assume the management and maintenance thereof is an endeavor to transfer a part of the burden from the taxpayers of Multnomah County to those of the other counties in Oregon, thereby rendering the act under consideration inoperative and void in this respect.

In support of the legal principle invoked, the decision rendered in *Simon* v. *Northup*, 27 Or. 487, 502 (40 Pac.

560, 30 L. R. A. 171), is relied upon. In that case an act of the legislative assembly authorized the City of Portland, by an issue of bonds, to acquire certain bridges and ferries then in operation, and to turn them over to Multnomah County, which *quasi*-municipal corporation thereafter was to supervise, manage, and control them as free bridges and ferries. The act referred to required that county, which included the City of Portland, to pay the interest as it accrued on the bonds, and also to create a sinking fund for their retirement. The act further provided that the bonds to be issued for such purpose and the interest thereon should be binding obligations against the city, in case the county failed or neglected to comply with the provisions of the enactment. The county having refused to perform any part of the duty thus undertaken to be imposed, proceedings were instituted against it to enforce the execution of the asserted duty, and it was held that such part of the act could not be sustained in that it was an attempt to compel one corporation to discharge the debt of another for the payment of which no equitable or moral obligation existed. In that case toll bridges and ferries were in use, whereby the Willamette River could be crossed by persons who paid the reasonable charges demanded therefor, when the act was passed to make such means of crossing such stream free. To effectuate that purpose the state, in the first instance, could probably have required Multnomah County to perform that duty unless the debt thereby created exceeded the limit prescribed by the fundamental law, but, having directed that the obligation to furnish free passage should be primarily discharged by the city, which complied therewith, the public was thereby accommodated, and the debt incurred therefor having already been created, the bur-

den could not thereafter be shifted to another public corporation.

In the case at bar the public is not now supplied with a bridge which can be used by any and all persons without restriction as to the vehicle employed for that purpose, at the place where the contemplated structure is proposed to be built, and, this being so, the case cited is not controlling herein. The authority of the state to receive a proportionate share of the tolls to be obtained from the use of the bridge, as hereinafter referred to, affords a sufficient consideration for a transfer of the title to the structure when completed, and creates an equitable and moral obligation for a transfer of a part of the debt.

9. It is argued that the act authorizing the issue of county bonds is unconstitutional and void, in that it attempts to delegate to the county taking advantage thereof power to impose a burden on all taxable property in the state, whereby the qualified electors of such county are given the privilege of determining the amount of such bonds, which advantage is not participated in by the legislature, or enjoyed by the voters in other counties of the state.

In support of the doctrine thus asserted, attention is called to the case of *Van Cleve* v. *Passaic Valley Sewerage Commrs.*, 71 N. J. Law, 574 (60 Atl. 214, 108 Am. St. Rep. 754), where it was held that the legislature was powerless to delegate to anybody, not having governmental functions, the authority to determine the amount to be raised by taxation. The authority to tax, like an exercise of a measure of the police power, can be delegated only to a municipal or a *quasi*-municipal corporation. Every county in Oregon, as a political subdivision thereof, is a *quasi*-municipal corporation, and as such the power to determine the

amount of tax to be levied on all property within its limits may be delegated to and exercised by such political entity. This legal principle is well sustained by decisions of other courts: *Mayor etc. of Baltimore* v. *State,* 15 Md. 376 (74 Am. Dec. 572, 594) ; *Whiting* v. *Town of West Point,* 88 Va. 905 (14 S. E. 698, 29 Am. St. Rep. 750, 15 L. R. A. 860) ; *State* v. *Mayor etc. of Des Moines,* 103 Iowa, 76 (72 N. W. 639, 64 Am. St. Rep. 157, 39 L. R. A. 285) ; *State ex rel* v. *Ashbrook,* 154 Mo. 375 (55 S. W. 627, 77 Am. St. Rep. 765, 48 L. R. A. 265).

10. As a part of the construction and maintenance of public highways the duty to build and keep up thereon bridges and adequate approaches primarily rests with a state which, unless expressly prohibited by its Constitution, may itself perform the obligation or commit the execution thereof to a public corporation: Cooley, Con. Lim. (7 ed.), 860; *Bank of Idaho* v. *Malheur County,* 30 Or. 420 (45 Pac. 781, 35 L. R. A. 141) ; *Yocum* v. *City of Sheridan,* 68 Or. 232 (137 Pac. 222). It was formerly held that any act of the legislative assembly, appropriating money to be used in any county of this state, to build a public road was a special and local law for laying, working and opening highways, and therefore violative of Article IV, Section 23, subdivision 7, of the state Constitution: *Maxwell* v. *Tillamook County,* 20 Or. 495 (26 Pac. 803) ; *Sears* v. *Steel, State Treasurer,* 55 Or. 544 (107 Pac. 3). Since these cases were decided, and evidently to overturn the effect thereof, Article XI, Section 7 of the Constitution of this state has been amended so as to read:

"The legislative assembly shall not lend the credit of the state nor in any manner create any debt or liabilities which shall singly or in the aggregate with previous debts or liabilities exceed the sum of fifty

thousand dollars, except in case of war or to repel invasion or suppress insurrection or to build and maintain permanent roads; and the legislative assembly shall not lend the credit of the state nor in any manner create any debt or liabilities to build and maintain permanent roads which shall singly or in the aggregate with previous debts or liabilities incurred for that purpose exceed 2 per cent of the assessed valuation of all the property in the state; and every contract of indebtedness entered into or assumed by or on behalf of the state in violation of the provisions of this section shall be void and of no effect'': Gen. Laws Or. 1913, p. 8.

The reason for invoking the provisions of Article IV, Section 23, subdivision 7, of the organic law to defeat legislative appropriations to build public roads need not now be mentioned, for they have been set forth in former opinions: *Allen* v. *Hirsch,* 8 Or. 412, 425; *Sears* v. *Steel, State Treasurer,* 55 Or. 544, 552 (107 Pac. 3). . Whatever ground may have been assigned for the conclusion thus reached is unimportant for the subdivision of the section of the Constitution referred to as a basis therefor was impliedly repealed by the amendment of Article XI, Section 7 of the Constitution.

The qualified electors of Oregon were not deprived of their right to challenge the policy evidenced by Chapter 349 of the General Laws of Oregon of 1913, for they had an opportunity, within a stated time after the passage of that act, to invoke an exercise of the referendum power reserved to them to defeat the measure: Article IV, Section 1, Constitution of Oregon. Not having done so, it must be presumed that not 5 per cent of the legal voters of the state were opposed to such enactment. By the terms of that statute the state constantly offers to every county in Oregon, bordering on the Columbia River or on the Snake, to

pay the interest on all bonds that such county, by a majority vote of its qualified electors, may determine necessary to be issued, in order to aid in building interstate bridges within its borders. Such offer is legitimate, and is justified by the fact that the primary duty of the state is to build such bridges, as a part of its highways, and when a county accepts the proposal, the sovereign is thereby relieved from a part of its original obligation.

Whether or not the plaintiff is a resident of and legal voter in Multnomah County, Oregon, or in any other county of the state, does not appear from the complaint herein. His taxable property in Multnomah County, however, is presumed to be specially benefited by the building of the interstate bridge, and for that reason it is just and proper that such property should be burdened with its ratable share of the amount of the bonds to be issued.

11. All the taxable property of a state is presumed to be generally benefited by the making of public improvements therein, and hence in the case at bar such property may properly be burdened with its proportionate share of the interest which will accrue on such bonds. The taxes to be imposed for the payment of such interest will be equal and uniform throughout the entire state. In Multnomah County, however, all taxable property must bear the additional incumbrance as equitable security for the payment of the principal of the bonds, but since such property will presumptively receive a greater advantage from the building of the bridge than property in any other county, it is just and equitable that a greater liability should be incurred. In the several taxing districts, though one necessarily includes the other, there is an equality of burden and a uniformity of privilege, and therefore

the rate of taxation does not violate Article I, Section 32, or Article IX, Section 1, of the state Constitution.

12. Where statutes are not repugnant to or inconsistent with each other they should be construed *in pari materia: McLaughlin* v. *Hoover,* 1 Or. 32; *Winter* v. *Norton,* 1 Or. 43; *Miller* v. *Tobin,* 16 Or. 540, 556 (16 Pac. 161); *Smith* v. *Kelly,* 24 Or. 464 (33 Pac. 642). This rule is particularly applicable when in the case of two enactments one is the complement of the other, as in the case at bar: *Barringer* v. *Loder,* 47 Or. 223 (81 Pac. 778).

13. Thus interpreting Chapter 145 of the General Laws of Oregon of 1913 with Chapter 349 thereof, the structure to be erected across the Columbia River will be an interstate toll bridge, the title to which, when completed, will vest in the state. It is possible that the legislative assembly reasonably supposed that the share of tolls to which the state would be entitled to collect from persons and the owners of property crossing such a bridge would be sufficient to meet the installments of interest as they severally matured, and also to pay the expenses of maintaining the structure, and for this reason the referendum was not invoked as to the latter enactment.

14. Whatever reason prompted the passage of the statute or prevented an exercise of the referendum power with respect thereto are legislative questions, and not subject to inquiry by the judicial department, the duties of which are limited to a consideration of the fundamental law involved. Believing that the act, authorizing the issue of the bonds, is not vulnerable on any constitutional ground, no error was committed in sustaining the demurrer to the complaint.

It follows that the decree should be affirmed, and it is so ordered.                                        AFFIRMED.

MR. JUSTICE BURNETT dissents.