Argued at Pendleton October 29, affirmed December 18, 1923, rehearing denied January 29, manuate issued March 6, 1924.

## JOSEPH TRIPPEER, EARL STACKLAND, A'. E. HARTLEY AND JOHN DEAN *v.* U. G. COUCH, COUNTY JUDGE, ET AL.

(220 Pac. 1012.)

**Highways—"Permanent Roads" Include Macadam Highways.**

1. Under Laws of 1913, page 170, authorizing county courts to issue bonds or warrants for building and maintaining permanent highways, the practical construction placed on the term "permanent roads" includes macadam highways.

**Counties—Outgoing Members of County Court cannot, by Unofficial Utterances, Bind Successors.**

2. The County Court is a court of record, and speaks through its journal, and outgoing members of the court cannot, by unofficial utterances, bind their successors.

**Highways—County Court to Select Type of Permanent Road.**

3. Where petition, under Laws of 1913, page 170, praying for the issuance of bonds for construction of a permanent highway over a designated course, was filed, and the County Court concurred in the proposition, issued notice of election to determine whether the County Court should issue bonds to provide for permanent road construction and the electors voted the bonds, the duty of selecting the type of road was a responsibility devolving upon the County Court.

**Mandamus—Cannot Determine How Discretion shall be Exercised.**

4. *Mandamus* may be used to compel an officer or the County Court to exercise the discretion vested in him or it, but the Supreme Court cannot determine how such discretion shall be exercised.

**Mandamus—Supreme Court cannot Compel County Court to Determine Matter Other Than According to Its Own Judgment.**

5. The Supreme Court may compel the County Court to proceed to act when it neglects to perform a legal duty, but cannot compel it to determine a matter in any other way than according to its own judgment and accordingly held that a decision of the County Court to construct a macadam road as being a permanent road within authority conferred by the electors to issue bonds for permanent road construction was not reviewable on *mandamus*.

From Union: J. W. KNOWLES, Judge.

In Banc.

The petitioners herein are electors and taxpayers of Union County, Oregon. The defendants, U. G. Couch, County Judge, J. F. Hutchinson and John Wells, are County Commissioners of Union County, Oregon, and, while acting together in their official capacity, constitute the County Court of Union County for the purpose of transacting county business.

Upon a petition filed by the plaintiffs in the Circuit Court for Union County, State of Oregon, an alternative writ of *mandamus* was issued commanding—

that the defendants "immediately contract for, let for advertising for bids, or proceed to construct a permanent road or permanently improve an existing road between Island City and the City of Cove in said county, grading or completing the grading thereof and paving the same with concrete, asphalt, bitulithic, or some similar hard surface pavement, and that you expend thereon the full sum of $276,000 on hands in the funds obtained by the sale of * * road bonds, * * or that you show cause before this court at the Circuit Court room in LaGrande, Union County, Oregon, on the 26th day of March, 1923, at 10 o'clock in the forenoon, why you have not done so."

It appears from the writ of *mandamus* that in pursuance of the provisions of Chapter 103, Laws of 1913, entitled,

"An Act to authorize the County Courts of the State of Oregon to issue and sell bonds or county warrants of the county for the purpose of building and maintaining permanent highways within the respective counties * * ; to hold special elections for the purpose of submitting to the voters of the county the question of the issuance of bonds and warrants;

and generally to provide a complete manner of procedure for the issuance of county bonds for the purpose of the building, construction and maintenance of permanent highways.''

a petition was filed praying for an election for the issuance of county bonds for the construction of permanent highways.

It is averred that the commissioners' court concurred in the proposition contained in the. petition and entered its order in accordance therewith. The petition proposed an election by the legal voters of Union County for the purpose of . determining the question of bonding that county in the sum of $1,-498,000, for the construction of permanent roads in accordance therewith. The court ordered an election and submitted the proposition of bonding the county for the purpose of constructing permanent roads—

and ''particularly described, designated and located each different road and highway so proposed to be constructed and improved, the beginning and ending of each, and the .amount and proportion of said bond issue that should be used upon each in such permanent construction and improvement; and, among other roads so designated and located, the said commissioners' court in said order said: 'That certain road beginning at the city of Island City and running thence in an Easterly direction and terminating in the City of Cove, the sum of $276,000.' ''

The petition then alleges the giving of notice of election, as required by the statute under consideration, which notice reads as follows:

''Notice is hereby given that on Saturday, the 11th day of October, 1919, a special election will be held in Union County to determine whether the County Court shall issue serial bonds of said county to provide for permanent road construction to the amount of One Million Four Hundred Ninety-Eight Thousand Dollars ($1,498,000), to mature as follows (naming

the series from No. 1 to No. 16), and the amount, and when each series would become due—from January 15, 1925, to January 15, 1940.''

The notices further described each road proposed to be constructed, and, among other things, set forth that—

''$276,000 shall be expended on that certain road beginning at the city of Island City and running thence in an easterly direction and terminating in the City of Cove.''

It is further averred that the electors, when voting upon the issuance of bonds, did so with the intent and belief that the several amounts designated in the order of the County Court and in the notices of election posted in pursuance of law, would be used in the construction of permanent improvements of the roads so designated. It is averred that the petitioners and the electorate of Union County well understood that the roads so designated, and particularly the road from Island City to Cove involved in this litigation, were to be constructed by placing upon the surface of such roads a concrete, asphalt, bitulithic or similar hard surface pavement, permanent in character. It is further averred that the amount determined for the construction of the road in question was upon the basis of what it would cost to grade and pave that road with hard surface of concrete, asphalt or similar hard surface material, and that amount was set forth in the order and the notices of election. It is further averred:

''That the said sum of $276,000, authorized and set aside by the electorate for the construction of said road * * is amply sufficient to pave such road with a permanent concrete, asphalt, bitulithic, or similar hard surface pavement, including both grading and pavement. * *

110 Or.—29

"That the defendants have failed, neglected and refused * * to advertise for bids, contract or let, or build or construct, themselves, the said permanent road and highway so authorized by the electorate of said county."

The petition shows that the County Court has funds available in the full sum of $276,000.

The defendants, answering the alternative writ of *mandamus,* after denying much of the matter alleged therein, as a further and separate answer allege:

"That the County Court of Union County has been delayed in the construction of said permanent road from Island City to The Cove, for quite a long time, on account of litigations in other counties in this state, both in the Circuit and Supreme Courts, involving the validity of bond issues in said counties, under the same law and under like elections and circumstances as the said bond issue for the construction of permanent roads in Union County,—which litigation, together with the bond market in general, made it impossible for the County Court of Union County to sell said bonds at par so as to have money available for the construction of said permanent road between Island City and The Cove."

They then plead in their defense their knowledge of road construction, acquired from the experience of the State Highway Department. The answer avers the construction of more than 600 miles of hard surface paved public roads by the state, "partly five-inch concrete and partly five-inch bitulithic, or black top, at an average cost of $28,100 per mile"; and the defendants say by their answer that under the traffic over such roads they have become broken and greatly deteriorated, and, in many instances, their reconstruction has been necessary; that, with the state's experience in view,

"the defendants had therefore concluded that with only the sum of $276,000 available for the construction of this permanent road between Island City and The Cove, a distance of some fifteen miles, that it will be impossible to construct either a concrete, asphaltum or bitulithic hard surfaced road over this route, of even five inches in thickness and sixteen feet wide," for the reason that a road so constructed would not bear the traffic over it.

The defendants then aver that the bond money voted for the Island City and Cove road is not to be used, nor will the court permit it to be used, for any other purpose than the building of a permanent highway between Island City and The Cove. They then allege that with the intention of constructing a permanent highway between these two points, the defendants, acting as the County Court of Union County, caused that road to be surveyed and laid out and have acquired rights of way therefor, and that the road is partly graded and ready to receive surfacing. Likewise, in pursuance of their authority and duty, they have had prepared by a competent highway engineer plans and specifications for two types of permanent road to be constructed between Island City and The Cove, which are now on file with the County Court.

One of the proposed roads is a "macadam finished road, 18 feet wide, constructed with a 6-inch base, of 3-inch crushed rock, on top of this a 4-inch course of 1-inch crushed rock, finished with a 4-inch course of finely crushed rock, all properly laid and spread and rolled to an even surface, with proper filler and binder mixture; the other composed of a 9-foot wide concrete track, 7 inches thick, with a 7-foot shoulder of crushed rock macadam, properly laid, spread and rolled with proper filler and binder. That the defendants, acting as the County Court of Union County, Oregon, have regularly advertised for bids for the

construction between Island City and the Cove of each type of said road in accordance with said plans and specifications therefor on file with this court, said bids to be opened March 30, 1923, and the contract therefor to be let to the lowest responsible bidder, with the right to reject any and all bids."

It is further averred that if a fair bid is received for the construction of the road, it is the intention of the court to proceed with the construction work with due diligence.

"As to what type of road will be finally selected and constructed, whether a hard surfaced concrete road or a crushed rock macadam road, will be determined by the sound judgment and discretion of the defendants, acting as the County Court of Union County, Oregon, taking into consideration the length of the road, the character of the ground over which the road is to be constructed, the traffic and travel to be accommodated thereby, the cost of such construction and the money available to pay for the same, and all other matters bearing on the subject."

The defendants aver that a macadam road, constructed in accordance with the plans and specifications hereinbefore mentioned, will constitute a permanent public road within the meaning of Chapter 103, Laws of 1913.

The petitioners, denying the allegations contained in the answer, in reply aver, in substance, that a substantial road, made of concrete nine feet wide, seven inches thick, with crushed rock shoulders seven feet wide, of the usual thickness of macadam roads, could be constructed for the sum of $242,000, and that a still better road with a hard surface pavement could be constructed for the full sum of $276,000.

On April 6, 1923, a trial was had, and on April 30th, the court ordered and adjudged that the alternative writ be dismissed.

The plaintiffs appeal to this court and assign error because of the court's dismissing the alternative writ of *mandamus* and refusing to order the defendants to advertise for bids for the construction of a hard surfaced road, of different types and materials, between Island City and Cove,—

"either the whole width, or of a sufficient width, or of the dual type, to cost the full sum of $276,000, or proceed to construct the road themselves; * * and in the event that such bids, when advertised for, should be within the limits of the said $276,000, allocated to this road, either for full width pavement or 9-foot pavement and 7-foot shoulder of macadam, or any other good hard surfaced road, then that the defendants let contract for the same, with specifications necessary for a good and permanent road,"

and in rejecting proffered testimony.

AFFIRMED.   REHEARING DENIED.

For appellants there was a brief over the names of *Mr. J. S. Hodgin, Mr. A. A. Smith* and *Mr. Grover Duffey,* with oral arguments by *Mr. Hodgin* and *Mr. Duffey.*

For respondents there was a brief over the names of *Mr. J. M. Devers, Mr. Ed Wright,* District Attorney, and *Messrs. Crawford & Eakin,* with oral arguments by *Mr. Thomas H. Crawford* and *Mr. Devers.*

BROWN, J.—The petitioners and appellants complain that the County Court refuses to construct a paved road from Island City to The Cove, in Union County. As a result of such refusal, they caused an alternative writ to issue, commanding defendants to show cause why a permanent road has not been con-

structed between the named points and paved "with concrete, asphalt, bitulithic or some similar hard surface pavement."

In the case of *James et al.* v. *City of Newberg et al.,* 101 Or. 616, 622 (201 Pac. 212), we quoted the following definition of "pavement" from 9 Nelson's Encyclopedia:

" 'Pavement' is a hard covering of the surface of a road or footway commonly composed of macadam, granite blocks, brick, sheet, or block, asphalt or wood for vehicular traffic, and blue flagstones, cement or tar * * ."

Likewise, we quoted from The New International Encyclopedia, Volume 15, page 464:

" 'Pavement.' This term, in its broader sense, includes any firm, hard covering for areas subjected to the wear and tear of human feet or of hoofs and wheels, designed to keep the feet or wheels from the ground or earth, and to present a more or less dry, durable, and smooth surface."

The petitioners assert that a macadam road is not a permanent highway, within the meaning of Chapter 103, Laws of 1913.

" 'Macadamization.' The process of laying carriage-roads, according to the system of John Loudon Macadam, a Scottish engineer (1756–1836) who carried it out very extensively in England. In the common process, the top soil of the roadway is removed to the depth of 14 inches. Coarse cracked stone is then laid in, to a depth of 7 inches, and the interstices and surface-depressions are filled with fine cracked stones. Over these as a bed is placed a layer 7 inches deep of road-metal or broken stone, of which no piece is larger than 2½ inches in diameter. This is rolled down with heavy steam or horse-rollers, and the top is finished with stone crushed to dust and

rolled smooth." The Century Dictionary and Encyclopedia.

"Permanent," as used in the statute, is not equivalent to "perpetual." If the County Court were compelled to build a road between the points named that would last forever, the amount of funds on hand would be clearly insufficient. We take the following excerpt from the American Encyclopedia, which illustrates the life of roads even when constructed with extraordinary efforts to attain durability:

"Herodotus tells us that in Egypt a 'Great King' built a magnificent road across the sands for the transportation of the materials for the 'Great Pyramid,' employing for this purpose one hundred thousand men for a period of ten years. This road, ten feet thick in places, was built of massive stone blocks * * . Traces of what may be a part of this road are found near the 'Great Pyramid,' probably the oldest authentic remains of a road surfaced with stone * * . Early historians speak of wonderful roads radiating from Babylon, on or before 2000 B. C. * * . The ancient Persians, Assyrians, Carthaginians, Chinese and Peruvians were all great road builders. Their works, however, have all passed into decay, and the records of their achievements lost or largely forgotten.

"The Romans are the first systematic road builders of which we have definite knowledge. * * The construction of the main Roman roads was extremely massive, consisting of four courses having a total thickness of about three feet, and generally a width of from sixteen to thirty-two feet or more * * . With the fall of the Roman Empire, its magnificent system of roads began to decay, and, as a result of the following thousand years of neglect, ceased to exist. Not until about the close of the middle ages did road building begin to revive, and then not in Italy, but in England and France."

However, it is unnecessary to look backward through ancient history to determine that the word "permanent," as used in our road laws, is a relative term. The term, "permanent roads," has a well-defined meaning in the jurisprudence of Oregon. In the case of *Stoppenback* v. *Multnomah County,* 71 Or. 493, 499, 500 (142 Pac. 832), that term, as used in Article XI, Section 10, of the Constitution, and in the statute (Chap. 103, Laws 1913), was thus defined:

" * * A public bridge being thus a part of a road which the structure makes passable, such span and approaches are permanent, within the meaning of the Constitution of Oregon, when they are put up with the intention that they shall remain at least until they are rendered useless by decay, or injured or destroyed by natural causes. The bridge proposed to be built is undoubtedly a part of a permanent road."

In *Lowell* v. *French,* 6 Cush. (Mass.) 224, it was said:

"In a strict sense, no sidewalk is permanent, and all are temporary. But we are of opinion that a sidewalk need not be made of stone or bricks in order to be 'permanent,' in contradistinction to 'temporary,' within the meaning of the charter. A wooden sidewalk which lasts eleven years, and for which an assessment is collected of the owners of adjoining buildings, who are liable to be assessed only for a permanent one, must be regarded as permanent."

"An elevated roadway constructed in a street, partly on posts resting on mudsills and partly on piles, the posts and piles being surmounted with capping or stringers and the whole overlaid with planks, constitutes a 'permanent improvement' for which an assessment may be levied against the benefited property. * * *Knickerbocker Co.* v. *City of Seattle,* 69 Wash. 336 (124 Pac. 920, 922); Id., 69

Wash. 365 (124 Pac. 922, 923). 3 Words & Phrases (2 Series), 970, 971, 972.

"In common use, the term [permanent] does not mean forever or lasting." 22 Am. & Eng. Ency. of Law (2 ed.), 698.

1. In this state the practical construction placed upon the term "permanent roads" includes macadam highways.

2, 3. Pre-election statements seem to be largely responsible for this litigation. However, the outgoing members of the County Court could not, by unofficial utterances, bind the hands of the present officials constituting the County Court. The County Court is a court of record and speaks through its journal. The present County Court of Union County could not escape, if it would, the responsibility of selecting the type of road to be constructed from Island City to The Cove. It is a duty the law places upon the court. The electors provide the funds, but the court plans and constructs the road.

The title of the act itself provides the purposes of the election held under the provisions of Chapter 103. The title reads:

" * * To authorize the several counties of the State of Oregon to hold special elections for the purpose of submitting to the voters of the county the question of the issuance of bonds and warrants * * ."

The body of the act is in line with the title.

It will be seen that the election was not held for the purpose of determining the kind or character of permanent road to be constructed, but that the people voted upon the question as to whether or not they should empower the County Court to issue bonds and warrants for the purpose of building and maintaining a permanent highway.

Section 13 of the act provides:

"All moneys raised under the provisions of this act shall be used in constructing permanent public roads in that county, which roads shall be constructed by the county court under its exclusive jurisdiction and such expert assistance as they may employ."

Section 24 reads:

"The County Court shall prepare plans and specifications of said road, and shall invite bids in conformity to such plans and specifications, and may also receive and consider any and all bids in conformity to any plans and specifications furnished by any individual, firm, or corporation offering to bid on such road. The County Court shall have power to reject any and all bids."

The petition filed with the court was drawn in accordance with the provisions of the statute, and requested the County Court of Union County to call a special election for the purpose of submitting to the voters of that county the question of issuing bonds to provide for the construction of permanent roads in the county. The petition is in harmony with the title and the body of the act.

Also, note the language of the election notice:

" * * to determine whether the County Court shall issue bonds of said county to provide for permanent road construction, to the amount of —— Dollars, to mature in —— years, no more than —— Dollars to be issued in any one year, and to bear interest at the rate of —— per cent per annum, and the funds so raised shall be expended in building permanent roads * * ." Section 6, Chap. 103, Laws 1913.

The writ of *mandamus* may be used for the purpose of compelling an officer or the County Court to exercise the discretion vested in him or it; but we have no power to determine how such officer or court shall exercise such discretion: 2 Bailey on

Habeas Corpus, Mandamus, § 209.  This court may compel the County Court to proceed to act, when it neglects to perform a legal duty.  Such is a well-established principle of law.  But it is a rule equally familiar that this court is not empowered to compel the County Court to determine a matter in any other way than according to the dictates of its judgment: *United States* v. *Lawrence,* 3 Dall. (U. S.) 42 (1 L. Ed. 502); *Ex parte Hoyt,* 13 Pet. (U. S.) 279 (star page), (10 L. Ed. 161, see, also, Rose's U. S. Notes).

4, 5. The writ of *mandamus* may be issued—

"to any inferior court, corporation, board, officer or person, to compel the performance of an act which the law specially enjoins, as a. duty resulting from an office, trust or station; but though the writ may require such court, corporation, board, officer or person to exercise its or his judgment, or proceed to the discharge of any of its or his functions, it shall not control judicial discretion."   Section 613, Or. L.

A text-writer wrote that—

"It will be observed that there is an important distinction between the writ as directed to inferior courts, and where the writ is directed to officers or bodies clothed simply with the exercise of ministerial functions.  In the former, the mandate is simply to proceed within its acknowledged powers, without direction as to the particular judgment it shall render, or the manner in which it shall proceed; while in the latter the mandate is to do some particular act or proceed in the manner directed.  This distinction is important and should always be kept in mind, otherwise a party may be misled."   2 Bailey on Habeas Corpus, Mandamus, § 209.

In the case of *Croasman* v. *Kincaid,* 31 Or. 445 (49 Pac. 764), this court, through Mr. Justice WOLVERTON, wrote:

" * * When the duty is one which necessarily involves the exercise of discretion and judgment, * * *mandamus* will not lie to direct or control the decision or determination of the functionary to whom the discharge of such duty is confided; and this is so because it is the discretion and judgment of that functionary, not that of the court, which is to be exercised. But, while courts will not direct and control discretion and judgment, they will require its exercise, not with a view to any particular result, but that the officer shall proceed in the discharge of his duty, and determine matters proper for his cognizance and declare, according to his own judgment, the result of his consideration: *Miller* v. *County Court,* 34 W. Va. 285 (12 S. E. 702); *State* v. *Oliver,* 116 Mo. 188 (22 S. W. 637); *Wailes* v. *Smith,* 76 Md. 469 (25 Atl. 922); *Burton* v. *Furman,* 115 N. C. 166 (20 S. E. 443); *State* v. *Doyle,* 38 Wis. 92; *People* v. *Board of Supervisors,* 26 Barb. (N. Y.) 118; *Dechert* v. *Commonwealth,* 113 Pa. 229 (6 Atl. 229); * * Spelling on Extraordinary Relief, § 1459."

This case was followed in *Irwin* v. *Kincaid,* 31 Or. 478 (49 Pac. 765), which involved a claim for printing blank assessment-rolls. The claim was presented to the Secretary of State, and it was sought to require him to 'audit and allow and draw his warrant upon the treasurer for the sum of $221.50, the amount asserted to be due the plaintiff. While holding that it was the duty of the Secretary of State to examine and determine the claim and draw his warrant therefor as by law provided, the court said:

"But the act required is one involving the exercise of discretion and judgment. He must satisfy himself touching the quality of the work and materials furnished, and determine upon the reasonableness of the charge, or whether in accord with the contract, if any. The writ of *mandamus* can therefore only require that he act in the premises, not direct how or to what effect he shall act."

The record does not disclose error because of the court's ruling on a question relating to "what was understood by the use of the word 'permanent,' as used in the petition."

It follows that the judgment of the lower court is affirmed.          AFFIRMED.   REHEARING DENIED.

Mr. Justice BURNETT did not participate in the consideration of this case.