Argued December 18, affirmed December 29, 1914.

## WHITE v. MULTNOMAH COUNTY.

(144 Pac. 1193.)

Counties — Sale of Bonds — Publication — "Newspaper" — "Leading Newspaper."

1. Under Laws of 1913, page 706, Section 17, requiring the publication of notice for two weeks before any sale of county bonds, in one newspaper in the county, and in one leading newspaper in Portland, and in one leading financial newspaper in New York City, a publication of notice in a weekly newspaper in the county and in a daily paper in Portland, and in a daily paper in New York once for two weeks before the time fixed for opening the bids and selling the bonds is sufficient, a "newspaper" being a publication in numbers, consisting commonly of single sheets, and published at short intervals, conveying intelligence of passing events, and a "leading newspaper" meaning a newspaper having a good circulation in the community where it leads, so as to give publicity to matters stated therein.

[As to what constitutes a newspaper, see note in Ann. Cas. 1913D, 879. As to place of publication of newspaper, see note in Ann. Cas. 1913E, 295.]

From Multnomah: JOHN P. KAVANAUGH, Judge.

This is a suit by Walter F. White against Multnomah County, a municipal corporation, Rufus C. Holman, D. V. Hart and W. L. Lightner, as county commissioners. From a decree for defendants, plaintiff appeals. The facts are stated in the opinion of the court. AFFIRMED. SUIT DISMISSED.

For appellant there was a brief with an oral argument by Mr. Lynn B. Coovert.

For respondents there was a brief over the names of *Mr. Walter H. Evans,* District Attorney, *Mr. Arthur A. Murphy,* Deputy District Attorney, with an oral argument by *Mr. Evans.*

In Banc.    MR. JUSTICE RAMSEY delivered the opinion of the court.

This is a suit by the plaintiff, as a taxpayer of Multnomah County, against the defendants as the legally constituted, qualified and acting board of county commissioners of said county, to enjoin the issuance of $250,000 worth of bonds proposed to be issued by the defendants as officers of Multnomah County, to aid in the construction of a certain interstate bridge and the approaches thereto, across the Columbia River, on a line from Portland, to Vancouver, Washington. These bonds constitute a part of an issue of $1,250,000 in bonds, authorized to be issued for the purpose indicated, by the people of Multnomah County, Oregon, at an election held November 4, 1913, under the provisions of Chapter 349 of the General Laws of Oregon for 1913.    The validity of said Chapter 349 of the General Laws for 1913, and the election held thereunder, by which the issuance of $1,250,000 in bonds was authorized, has already been before this court in the case of *Stoppenback* v. *Multnomah County,* 71 Or. 493 (142 Pac. 832), and said act of the legislature was therein held to be constitutional and the election thereunder was declared to be valid.    It is alleged in plaintiff's complaint and admitted by defendants' demurrer that the bonding committee, by a resolution passed at a meeting on October 15, 1914, directed the county clerk to invite proposals, by public advertisement in the manner provided by law, for the sale of $250,000 of bonds,

74 Or.—7

and directed that the advertisement be published in the "Evening Telegram" of Portland, Oregon, a leading newspaper published daily, the "Pacific Banker" of Portland, Oregon, which is published weekly, and the "Daily Bond Buyer" of New York City, New York, a leading financial newspaper published daily in New York City, New York. It was further provided by said resolution that the bids be opened on November 9, 1914. Acting under said authority, the county clerk of Multnomah County caused to be published on the 24th day of October, the 31st day of October, and the 7th day of November, 1914, a notice of sale of said bonds, the form or sufficiency of which is not contested here. Pursuant to said notice and advertisement, 16 different proposals for said bonds were received and opened on November 9, 1914, among them being the joint proposal of Harris Trust & Savings Bank of Chicago, and Morris Brothers, of Portland, offering to purchase $250,000 of said bonds at the rate of 5 per cent interest from July 1, 1914, for the price of $253,375, which said proposal was the highest and best bid received, and which was in compliance with the terms of the advertisement, and which was accepted. It is now proposed by the defendants to issue said bonds to said bidders in accordance with the terms of said bid. *The sole point in dispute is the sufficiency of the publication of the advertisement for proposals.* Defendants demurred to the complaint on the ground that it did not state facts sufficient to authorize equitable intervention, and this demurrer was sustained, and, the plaintiff having declined further to plead, the suit was dismissed, from which decree appellant now appeals to this court.

Section 17 of Chapter 349 of the Laws of 1913 prescribes the notice that was required to be given. It is as follows:

"No bonds authorized by this act shall be sold for less than par or for anything but cash. All bids to purchase bonds must be sealed and accompanied by certified check for 5 per cent of the amount of the bid and the bonding committee may reject any and all bids. *Said committee shall advertise in one newspaper in the county, if there be one, and in one leading newspaper in Portland, Oregon, and in one leading financial newspaper in New York City for two weeks before any sale of bonds,* the fact of such sale, inviting bids therefor and stating such facts as will interest prospective purchasers; for example, the date and place of sale, the terms of sale, the character of the bonds, the amount, interest and denomination thereof, the fact that all bids must be accompanied by a certified check for 5 per cent of the amount of the bid, that any and all bids may be rejected, that the bonds may be sold only for cash, not below par, and to the highest bidder and such other facts as may in the judgment of said committee procure the most advantageous sale of said bonds."

The bonding committee was required to advertise *for two weeks before any sale of bonds* in certain kinds of newspapers. The plaintiff's contention is set forth in his brief as follows:

"By the terms of Section 17, Chapter 349, Laws of 1913, it is required that the bonding committee shall advertise for two weeks before any sale of bonds. It is the contention of appellant herein that the requirement that the notice 'shall' be advertised 'for two weeks' is mandatory upon the bonding committee, and is jurisdictional to the valid issuance of any bonds. Appellant does not contest the sufficiency of the publication of that notice inserted in the 'Pacific Banker' of Portland, Oregon, because it appears that the notice was published in all issues of that paper between Oc-

tober 24, 1914, and November 7, 1914, both inclusive. But appellant earnestly contends that the defendants, having chosen two daily papers for the publication of their notice of sale, have not complied with the law by inserting the notice in only one issue per week therein. And this defect is vital to a valid publication.

The plaintiff admits that the publication of the notice in the "Pacific Banker" of Portland was proper, as it is a weekly paper and the notice was published in all issues of that paper during the two weeks period; but he insists that the publication of the notice in the "Evening Telegram" of Portland and the "Daily Bond Buyer" of New York were insufficient, because said papers are published daily, and said notice was published in each of them only three times. The plaintiff contends that the notice should have been published in every issue of said daily papers for the period of two weeks. The statute cited *supra,* requires the notice to be published for a period of two weeks before the sale of the bonds. "Two weeks," within the meaning of this statute, comprises 14 successive days, and this statute requires the publication of the notice for that period of time. It does not require it to be published for three weeks or 21 days; but the publication for a longer period than that required by the statute does not vitiate the publication. This statute does not require that either of the newspapers in which the notices are required to be published be a daily. It does not say how frequently the papers should be published; but as the notice is required to be published *for a period of two weeks,* it is evident that a publication at least once a week for that period of time was intended. Each of the three papers mentioned in the statute is required to be a *newspaper* and one of then is required to be a *leading* newspaper of the City of

Portland and another must be a leading financial newspaper in New York City. It is evident that it was not intended to *require* the publication of the notice in a daily newspaper. A weekly paper is sufficient if it possesses the other qualities required.

In his Law Dictionary (2 ed.), page 816, Mr. Black defines a *newspaper* thus:

"According to the usage of the commercial world, a newspaper is defined to be a publication in numbers, consisting commonly of single sheets, and published at short and stated intervals, conveying intelligence of passing events."

If the legislature had intended that the notices required by said act to be published should be published daily or in a daily paper, it would have so stated in the act. The only requirement, except as to the characters and places of publication of the papers, is that the committee shall advertise "for two weeks before any sale of bonds."

In 17 Ency. Pl. & Pr., page 98, it is said:

"It is generally held *that where a notice is required to be published for a certain number of weeks, publication once a week for that number of successive weeks is sufficient.*"

The point contended for by the plaintiff is that, inasmuch as the committee published said notice in two daily papers it was incumbent on them to publish it in every issue of those papers for the period of two weeks. He admits that publication once a week for the period of two weeks would have been sufficient, if it had been done in *weekly* newspapers having the required qualifications, but he insists that, inasmuch as two of the papers selected by the committee were *dailies,* the notice should have been run in every issue of those papers during the two weeks period. We are

unable to see any good reason for the plaintiff's contention. These two papers are admitted to be leading newspapers in the cities in which they are published. A paper could not be "a leading newspaper" without having a good circulation in the community where *it leads,* and publication of a notice in such a paper would give *publicity* to the matters stated therein. That is what the legislative assembly intended to effect. The plaintiff's contention is supported by decisions of the Supreme Court of Nebraska: *Union Pacific R. Co.* v. *Montgomery,* 49 Neb. 429 (68 N. W. 619); *Claypool* v. *Robb,* 90 Neb. 193 (133 N. W. 178); *Smith* v. *Potter,* 90 Neb. 298 (133 N. W. 437). However, we are unable to assent to the rule adopted in Nebraska and insisted upon by the plaintiff.

In *Commonwealth* v. *Allen,* 203 Mass. 529, 530 (89 N. E. 918), a statute was invoked that required a certain regulation to be advertised *for at least two weeks in two or more newspapers published in Boston,* and the Supreme Court of Massachusetts, commenting thereon, says *inter alia:*

"The regulation in question was duly passed and advertised in Boston newspapers as follows: In the 'Transcript' and 'Globe' from December 15, 1908, to December 29, 1908, inclusive, except on the two Sundays * * and on Christmas in the 'Transcript'; and in the 'Herald' from December 22, 1908, to January 4, 1909, inclusive, except on the Sundays of December 27 and January 3. The 'Globe' and 'Herald' issue Sunday editions, but the 'Transcript' does not, and the exceptions do not show whether it was published on Christmas, 1908. The point relied on by the defendant is that the regulation was not published as required by the statute. He contends that an advertisement for at least 14 consecutive days, including Sundays and holidays, will alone satisfy the terms of the statute. * * But an examination of the statutory phrase quoted

from the section we are considering in the light of other statutes and the decisions of this court makes it clear that it is not susceptible of the construction urged by the defendant. In *Bachelor* v. *Bachelor,* 1 Mass. 256, an order of the notice to be published 'three weeks successively' was held to have been complied with if printed once a week in a newspaper issued semi-weekly. Statutes of 1863, Chapter 107, Section 2, required a notice to be published 'for two weeks successively' in a newspaper in Springfield. A publication *in a daily newspaper two days in each week* was held to be a compliance with the statute: *Brewer* v. *Springfield,* 97 Mass. 152. General Statutes, Chapter 19, Section 14, provided that rules as to carriages must be published 'at least one week in some newspaper.' Such rules adopted by the board of aldermen of Boston were held to be legal by publication once in several Boston papers: *Commonwealth* v. *Matthews,* 122 Mass. 60. The validity of tax sales under statutes requiring an advertisement for 'three weeks' * * has never been questioned because made only once in each week. * * All that the present statute requires is such an advertisement in two weeks as may be reasonable notice to the people. It is conceivable that a publication in weekly newspapers or once a week in daily newspapers of sufficient circulation and public regard might be a compliance with the law. Clearly the advertisement here assailed was sufficient.''

In *Bachelor* v. *Bachelor,* 1 Mass. 256, the statute relied on required a notice for the sale of real estate to be published in a newspaper ''three weeks successively.'' The notice was published in a paper issued semi-weekly, on June 30th, July 7th, and July 11th. It was published three times in a semi-weekly paper, and it was contended that it had not been published *three weeks successively;* but the court held that the law had been substantially complied with.

In *Brewer* v. *Springfield,* 97 Mass. 152, the facts were that, a statute required a notice to be published

"for two weeks successively" in a newspaper, and it had been published in only four issues of a *daily* paper, and the court held that the notice had been published "for two weeks successively," as the statute required.

In *Knox County* v. *Ninth National Bank*, 147 U. S. 91 (37 L. Ed. 93, 13 Sup. Ct. Rep. 267), a part of the syllabus is:

"An order of court, directing a notice of an election which was to take place in 34 days to be given by publication in a designated newspaper for five weeks, must be construed to mean a publication in each of the five weeks."

We conclude that the rule prevailing in Massachusetts is a better one than that in vogue in Nebraska. In Nebraska, it is held that where a notice is required to be published for a stated number of weeks, its publication once a week for the required period is a compliance with the statute, if it is published in a *weekly* newspaper, but that, if it is published in a daily paper, it must be published *in every issue of that paper during the specified period*. If a weekly newspaper has 10,000 subscribers, and a daily paper has that number, other things being equal, we presume that the publication of a notice in the *daily* paper would impart notice to about as many persons as publication thereof in the *weekly* paper would.

In the larger cities, the leading dailies have more subscribers and reach more people than the weekly press do, we believe. As a vehicle for giving publicity to a proposed sale of bonds, it seems to us that one publication in a leading daily paper is as effective as one publication in a leading weekly. In this matter, the statute requires the publication of the notice "for two weeks before any sale of bonds" in one newspaper in the county where the bonds are to be issued, and in

one leading newspaper in the City of Portland, and in one leading financial newspaper in the City of New York. The defendants caused the publication of the notice in the ''Pacific Banker'' of Portland, Multnomah County, published weekly, and in the ''Evening Telegram,'' published daily in the City of Portland, and in the ''Daily Bond Buyer,'' published daily in New York City. The bids for the bonds were to be opened on November 9, 1914. Said notice was published in each of said three newspapers on October 24 and October 31 and November 7, 1914. Said notice was published once a week for two successive weeks prior to the time fixed for opening the bids and selling the bonds. In fact, said notice was published three times in each of said newspapers.

We conclude that the notice, given as stated *supra,* was a compliance with the said statute, and that the defendants have a right to issue and sell said bonds, and that the plaintiff's complaint does not state facts sufficient to constitute a cause of suit. The demurrer to the said complaint is therefore sustained, and the suit is dismissed and the decree of the court below is affirmed.                              Affirmed.