54 So.2d 524 (1951)
SUNSHINE CONST. OF KEY WEST, Inc.
v.
BOARD OF COM'RS, MONROE COUNTY.
Supreme Court of Florida, en Banc.
October 19, 1951.
Thomas S. Caro, Key West, for appellant.
Paul E. Sawyer, Key West, for appellee.
*525 THOMAS, Justice.
In this case it seems that the issues would be more simply presented by developing the facts as we discuss the first two of appellant's questions.
The Board of County Commissioners caused to be published a notice that a public hearing would be held 13 March 1951 for the purposes of discussing the construction of a new jail and the repair and improvement of the courthouse, and hearing objections to the projects. This notice was intended to comply with Section 135.01, Florida Statutes 1949, and F.S.A.
The appellant contends that it did not because it appeared only in the issues of February 8th, 15th and 22nd and March 1st and 8th, of the Key West Citizen, a newspaper published "each day (except Sundays, Fourth of July, Labor Day and Christmas)" to quote the advertising manager's affidavit of publication. It is appellant's thought that the notice could have no efficacy because it appeared in the newspaper only four times in the thirty-day period preceding the day of the hearing, while the statute requires publication "for thirty days."
The appellant concedes that if a weekly newspaper had been used the five publications would have been sufficient, but insists that inasmuch as a daily was employed there could not have been compliance unless the notice appeared in every issue of the paper between February eleventh and March thirteenth. To support his position he cites three cases decided by the Supreme Court of Nebraska: Union Pac. Ry. Co. v. Montgomery, 49 Neb. 429, 68 N.W. 619; Stevens v. Naylor, 75 Neb. 325, 106 N.W. 446; and Claypool v. Robb, 90 Neb. 193, 133 N.W. 178. Neither is convincing.
The Legislature made no attempt to characterize the newspaper by the number of its issues. That body used only the term "newspaper" and then emphasized it by the provision that the notice appear in a newspaper published in the circuit if none was published in the county. To get a proper definition of a "newspaper" we must go to Section 49.01, Florida Statutes 1949, and F.S.A., where we find, so far as the number of publications is concerned, that a newspaper, in which legal notices may be given, is one published "once a week or oftener".
The county commissioners were authorized then to place the notice in a paper published "once a week or oftener" and they chose one published six days out of seven. But there was no injunction in the law to put the notice in each issue and so to hold would be to supply something not required or, we think intended. The qualification of a newspaper is not tested by the frequency of its issues so long as the paper is published at least once each week. There seems no reason to conclude that a board which has the choice of a weekly or daily newspaper would be required to publish a notice seven times as often in one as in the other. A notice appearing once each week in either would suffice.
We agree with the opinion in White v. Multnomah County, 74 Or. 96, 144 P. 1193. Under the Oregon law a notice of the sale of bonds was required to be given for two weeks in a newspaper in the county, in a leading newspaper in the city of Portland and in a financial newspaper in the city of New York. The first was a weekly, the last two were dailies. The court rejected the contention that the notice should have appeared in all issues of the dailies for the designated period.
The notice in the instant case was sufficient.
After the hearing the Board of County Commissioners adopted a resolution, pursuant to Sections 135.01 and 135.02, Florida Statutes 1949, and F.S.A., declaring the need of a new jail and repair of the courthouse, and providing for the levy of a tax of five mills for fifteen years to pay for the improvements. Later, a contract for the work was let and the commissioners agreed to deliver to the contractor certificates of indebtedness "in anticipation of the collection of the building tax."
There is ample authority in the opinions of this court for the issuance of certificates of indebtedness to finance the construction of a jail, Tapers v. Pichard, *526 124 Fla. 549, 169 So. 39, 41, and a courthouse, Posey v. Wakulla County, 148 Fla. 115, 3 So.2d 799, in anticipation of the five-mill levy instead of waiting until the accumulated taxes levied and collected under 135.01 are sufficient for those purposes. To quote from the former opinion, the county need not wait until the cash is in hand but may pay for the construction "from the funds as they are collected * * *."
As this writer understands the opinions, the method approved by this court does not contemplate an obligation to pay to the certificate holder any moneys except those realized from the "building tax."
The certificates now proposed do not comport with that plan. It is to be stipulated in the instruments, according to the resolution of the commission, that to insure their "prompt and full payment * * * from the tax in anticipation of which [they are] issued and interest thereon the full faith and credit of said county is irrevocably pledged." (Italics ours). It might be plausibly argued that it was only intended to insure an application of the building tax to prompt discharge of certificates due, but if that be the sole idea there is no occasion irrevocably to pledge the full faith and credit of the county. If these words are superfluous they should be deleted; if they are not, the bonds would not be valid in view of Section 6 of Article IX of the Constitution, F.S.A.
If it is purposed to pay the certificates from the tax but the interest from some other source, for which the credit and faith of the county is pledged, as a literal interpretation would indicate, then the language is objectionable.
The ultimate test of the validity of obligations issued without an approving vote of freeholders who are qualified electors is the remedy of the holder in event of default. In the case of certificates with which we are dealing, a default should entitle the debtor to a coercive writ affecting only the income from the five-mill levy.
A discussion of appellant's third question would add nothing of importance to what we have already written.
So long as the proposed bonds remain in their present form without deletion of the objectionable language the bill contains equity. Therefore we are constrained to reverse the decree of dismissal.
Reversed.
SEBRING, C.J., and TERRELL, ROBERTS and HOBSON, JJ., concur.
CHAPMAN and ADAMS, JJ., dissent.
CHAPMAN, Justice (dissenting).
It is my view that the decree of dismissal entered below should be affirmed on authority of Tapers v. Pichard, 124 Fla. 549, 169 So. 39; Hearn v. Warner, 142 Fla. 281, 194 So. 791, and Posey v. Wakulla County, 148 Fla. 115, 3 So.2d 799.
ADAMS, J., concurs.